UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    -v-                             CASE NO. 5:15-CR-0198 (BKS)

CLAYTON BROTHERS,

                Defendant.
_____

**PRETRIAL MOTIONS**

DATED:      October 29, 2015
               Syracuse, New York

                          Respectfully submitted,

                          LISA A. PEEBLES
                          Federal Public Defender

             By:    Randi J. Bianco, Esq.
                    Assistant Federal Public Defender
                    Bar Roll No. 507514
                    4 Clinton Square, 3rd Floor
                    Syracuse, New York 13202
                    (315)                701-0080

## Table of Contents

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 5

**I.   THE COURT SHOULD EXCLUDE EVIDENCE OF ANY GUNS, AMMUNITION, BODY ARMOR, OR RECEIPTS THAT JOHN PARKER STATED HE FOUND IN MR. BROTHERS' GARAGE AND THE ATTIC ABOVE MR. BROTHERS' BEDROOM BECAUSE THE SEARCHES VIOLATED MR. BROTHERS' FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES.** 5

    A.  A "search" occurred because John Parker invaded areas in which Mr. Brothers had a subjective expectation of privacy that was objectively reasonable. ........................................ 6

    B.  The Fourth Amendment applies to the searches performed by John Parker because he was acting as an agent of the government. ............................................................................ 8

    C.  The warrantless searches were per se unreasonable and none of the 'few specifically established and well-detailed exceptions' to the warrant requirement applies. ...................... 9

**II.   THE COURT SHOULD EXCLUDE EVIDENCE OF MR. BROTHERS' STATEMENTS TO HOMELAND SECURITY AGENTS BECAUSE THE AGENTS SUBJECTED HIM TO A CUSTODIAL INTERROGATION BEFORE ADMINISTERING *MIRANDA* WARNINGS.** .................................................................... 15

    A.  Mr. Brothers was in custody because he was an inmate for an unrelated matter at the time of the interrogation. .......................................................................................................... 15

    B.  The agents interrogated Mr. Brothers by engaging in words and actions reasonably likely to elicit an incriminating response. ............................................................................ 16

    C.  Mr. Brothers' statements were not "spontaneous utterances." ................................. 18

**III.   THE COURT SHOULD EXCLUDE EVIDENCE OF MR. BROTHERS' STATEMENTS MADE AFTER HIS UNEQUIVOCAL REQUEST FOR COUNSEL BECAUSE THE AGENTS VIOLATED MR. BROTHERS' FIFTH AMENDMENT RIGHT TO COUNSEL BY CONTINUING TO INTERROGATE HIM.** ........................ 20

**IV.   THE COURT SHOULD EXCLUDE EVIDENCE OF ACCUSATIONS OF CHILD MOLESTATION AGAINST MR. BROTHERS BECAUSE THAT EVIDENCE IS NOT RELEVANT TO THE CHARGES AGAINST HIM AND IS MORE PREJUDICIAL THAN PROBATIVE.** .................................................................... 21

**V.   THE COURT SHOULD EXCLUDE EVIDENCE OF THE BALANCE IN MR. BROTHERS' BANK ACCOUNT BECAUSE THAT EVIDENCE IS NOT RELEVANT TO THE CHARGES AGAINST HIM AND IS MORE PREJUDICIAL THAN PROBATIVE** ......................................................................................................... 23

**VI.   THE COURT SHOULD EXCLUDE EVIDENCE OF MR. BROTHERS' RESPONSE TO THE FORFEITURE ACTION BECAUSE ANY SUCH REFERENCE WOULD VIOLATE DUE PROCESS AND THE EVIDENCE IS MORE PREJUDICIAL THAN PROBATIVE.** .......................................................... 23

**CONCLUSION** ................................................................................. 24

## PRELIMINARY STATEMENT

Clayton Brothers submits this memorandum in support of his pretrial motion to suppress physical evidence obtained from his home without a warrant in violation of his Fourth Amendment rights and evidence of statements made to law enforcement officials without *Miranda* warnings and after his unequivocal request for counsel in violation of his Fifth Amendment rights, to preclude evidence of an investigation into child molestation allegations, to preclude evidence of the balance in Mr. Brothers' bank accounts, and to preclude evidence that Mr. Brothers invoked his right to counsel in response to a notice of seizure.

## BACKGROUND

As a teenager, Mr. Brothers was convicted of robbery and served time in prison. (Ex. A., DHS Report of Investigation 001, at 3.) He was released in August 2001 and placed on parole. Parole documents governing his release contain two different search provisions. The search provision from the Pennsylvania Board of Probation and Parole reads "I expressly consent to the search of my person, property, and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole." (Ex. B, Penn. Bd. Prob. & Parole Conditions Governing Parole/Reparole, ¶ 7.) The search provision from the State of New York Department of Corrections and Community Supervision reads "I will permit my Parole Officer to visit me at my residence . . . and I will permit the search and inspection of my person, residence and property." (Ex. C., DOCCS Cert. of Release to Parole Supervision Nov. 5, 2013, ¶ 4.)

Mr. Brothers owns a home at 861 Blanchard Hill Road in Russell, New York. (Ex. D, DHS Report of Investigation 004, at 3.)  He bought the home in 2012. *Id.* In April 2014, Mr.

Brothers packed some of his things and left the family home after a dispute with his wife and step-children. (Ex. E, Brothers Aff., ¶ 2.)

On April 28, 2014,[1] computer forensic agents from the Department of Homeland Security Investigations unit arrived at Mr. Brothers' home to search his computers and electronic media for evidence of child exploitation. (DHS Report of Investigation No. 001 at 3.) The officers who performed the search did not have a warrant. They found no evidence of wrongdoing. *Id*. Mr. Brothers was never charged in connection with the report that led to this search. **Before leaving, the agents ordered Mr. Brothers' family "to look for anything suspicious and report it** to them or the [New York State Police]." *Id*.

At that time of these events, the boyfriend of one of Mr. Brothers' step-daughters was staying at the Brothers' family home. (DHS Report of Investigation No. 001 at 1; Brothers Aff. ¶ 6.) His name is John Parker. *Id*. He had arrived at the family home in February 2014 with only a backpack. (Brothers Aff. ¶ 6.) He did not have a key to the house. *Id*. Other than the backpack, his belongings were in storage in Texas. *Id*. He did not assist with the bills and paid no rent. *Id*. He was allowed to sleep in Mr. Brothers' step-son's room. *Id*. This was understood to be a temporary situation. *Id*.

John Parker was present when the Homeland Security agents directed the family to look for suspicious items. (DHS Report of Investigation No. 001 at 3.) The very next day after the agents conducted the warrantless search of Mr. Brothers' computers, Parker contacted authorities. (DHS Report of Investigation No. 001 at 1.[2]) Parker told the authorities that "**after**

---

[1]    The Department of Homeland Security Report of Investigation lists the date as April 23, 201<u>5</u>. That is a typographical error, as the context of the document makes clear.

[2]    The Homeland Security Report of Investigation states that Parker contacted the New York State Police. Another document obtained in discovery indicates that Parker contacted Mr. Brothers' parole officer.

**agents told him to look for anything suspicious** he located an attic access above the closet in"
Mr. Brothers' bedroom. *Id.* (emphasis added). He also "found an attic access in the garage." *Id.*
He reported that he found guns, body armor, and ammunition in these locations. *Id.*

Parker spoke to agents again on May 17, 2014. (DHS Report of Investigation No. 001 at
4.) He stated that "he was moving a lawn tractor out of the garage, when he moved a laundry
basket stacked on top of the lawn mower a long gun fell out of a bag which was contained in the
laundry basket." *Id.* Parker also stated that he found ammunition under the bag. *Id.*

Parker contacted the New York State Police again the next day--May 18, 2014--to advise
them he found two more load high capacity magazines in a duck blind. The New York State
Police then seized both Sig Sauer .223 caliber loaded magazines. (DHS Report of Investigation
No. 001 at 4.)

Parker allegedly located an invoice from cheaperthandirt.com in the garage some time
later.[3] The receipt, dated May 2, **2011**, was for, among other things, ammunition. (Ex. F,
Invoice.[4]) The "bill to" and "ship to" addresses were for "Clay Brothers" at addresses in
Houston, Texas. *Id* at 2.

On June 26, 2014, Mr. Brothers' wife contacted the New York State Police and informed
them that her son visiting from Texas had found more ammunition in a box of belongings he had
stored at 861 Blanchard Hill Rd.  (DHS Report of Investigation No. 001 at 4.) The NYSP seized
a quantity of .223 caliber ammunition. *Id.*

---

[3]     According to the government's attorney, the invoice from cheaperthandirt.com was found by John Parker
in the garage some time later.  He brought it to Jamie Brothers, who called Investigator Nye and she brought it to
Nye. The investigator did not include the information in the official reports.
[4]     The version of this receipt that Defendant received in discovery is from cheaperthandirt.com. Defendant
does not have a copy of the receipt that John Parker allegedly found.

On January 26, 2015, Mr. Brothers was taken into custody in South Carolina for a violation of Pennsylvania state parole. (Ex. G, DHS Report of Investigation No. 001 at 4.)

On May 12, 2015, Homeland Security agents interrogated Mr. Brothers at Camp Hill Pennsylvania State Correctional Institute, where he was incarcerated for the violation of parole. (DHS Report of Investigation 003 at 3.) The agents did not administer *Miranda* warnings. (Brothers Aff. ¶ 7.) The agents said "no" when Mr. Brothers asked to see official paperwork. *Id*. The agents informed Mr. Brothers that there were criminal charges pending against him pursuant to 18 U.S.C. § 922(g) – Felon in Possession. (DHS Report of Investigation 003 at 3.) They presented Mr. Brothers with photographs of the firearms, ammunition, and body armor that were seized from his residence. *Id*. They also presented Mr. Brothers with receipts from cheaperthandirt.com for purchases of ammunition, optics, and accessories. *Id*. Mr. Brothers allegedly said, "They are not all mine." *Id*. According to the agents' report, the agents "told [Mr.] Brothers they could continue talking but would have to advise him of his rights before they spoke any further utilizing a Department of Homeland Security Statement of Rights form." *Id*. Mr. Brothers allegedly responded by stating "there is a reasonable explanation and I want to talk to an attorney." *Id*. The agents' report states that they then stopped questioning Mr. Brothers. *Id*. Mr. Brothers declares that one of the agents told him that he needed a lawyer. (Brothers Aff. ¶ 8.) Mr. Brothers responded, "Okay, can you get one for me?" *Id*. One of the agents responded, "That is not our job." *Id*. According to Mr. Brothers, the agents then continued questioning him. *Id*. Even the agents' version of events does not reflect that they ever actually advised him of his rights. (DHS Report of Investigation 003 at 3.) Before the agents left Mr. Brothers allegedly asked why he was facing the felon in possession charges. *Id*. The agents began explaining and showing Mr. Brothers a photograph of the Sig Sauer pistol seized from his residence with an

4

attached optic sight catalogued as an item purchased by him from cheaperthandirt.com. *Id.* Mr. Brothers looked at the photograph and the receipt and allegedly said, "I don't think that's right." (DHS Report of Investigation No. 003 at 3.)

On July 15, 2015, Mr. Brothers was charged by indictment with five counts of Possession of Firearms and Ammunition by a Prohibited Person under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. No. 1.) Trial is scheduled for November 30, 2015. (Dkt. No. 17.)

## ARGUMENT

**I.     THE COURT SHOULD EXCLUDE EVIDENCE OF ANY GUNS, AMMUNITION, BODY ARMOR, OR RECEIPTS THAT JOHN PARKER STATED HE FOUND IN MR. BROTHERS' GARAGE AND THE ATTIC ABOVE MR. BROTHERS' BEDROOM CLOSET BECAUSE THE SEARCHES VIOLATED MR. BROTHERS' FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES.**

The Fourth Amendment prohibits "unreasonable searches" by the government. U.S. CONST. amend. IV; *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A search occurs when there is an invasion of "an object or area where one has a subjective expectation of privacy that society is prepared to accept as objectively reasonable." *United States v. Hayes*, 551 F.3d 138, 143 (2d Cir. 2008).  "A warrantless search is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-detailed exceptions.'" *United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). "If the defendant succeeds in showing that the officers conducted a warrantless search, the burden shifts . . . to the government to show that the search fell within one of the exceptions to the warrant requirement." *United States v. Gagnon*, 230 F. Supp. 2d 260, 267-68 (N.D.N.Y. 2002).

Here, as discussed in more detail below, "searches" occurred because John Parker invaded areas in which Mr. Brothers had a subjective expectation of privacy that was objectively reasonable. There is a presumption of unreasonableness because there was no warrant for the searches. No exception to the warrant requirement applies to the searches conducted. Therefore, the searches violated Mr. Brothers' Fourth Amendment right against unreasonable searches and seizures and the Court should exclude evidence of any guns, ammunition, body armor, or receipts discovered in those searches. In the alternative, Mr. Brothers requests an evidentiary hearing on the issue of the searches.

**A. A "search" occurred because John Parker invaded areas in which Mr. Brothers had a subjective expectation of privacy that was objectively reasonable.**

Mr. Brothers challenges John Parker's invasion of a portion of Mr. Brothers' attic accessible only through a closet in Mr. Brothers' bedroom and his invasion of Mr. Brothers' garage and garage attic. As mentioned above, a "search" occurs when there is an invasion of "an object or area where one has a subjective expectation of privacy that society is prepared to accept as objectively reasonable." *Hayes*, 551 F.3d at 143. Thus, in order to challenge a search on Fourth Amendment grounds, a defendant must demonstrate that he had a legitimate expectation of privacy "by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner." *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (citing *United States v. Villegas*, 899 F.2d 1324, 1333 (2d Cir. 1990)). Here, Mr. Brothers has a legitimate expectation of privacy in the entire premises at 861 Blanchard Hill Road because he owns the home. (DHS Report of Investigation 004 at 3.) In addition to having an objectively reasonable expectation of privacy in the premises as a whole, Mr. Brothers

specifically had an objectively reasonable expectation of privacy in the attic space above his bedroom and in his garage.

Mr. Brothers had a subjective, objectively reasonable expectation of privacy in the portion of the attic accessible only through the closet in his bedroom. There is a lock on the bedroom door. (Brothers Aff. ¶ 3.) Mr. Brothers and his wife were the only ones with keys. *Id.* Mr. Brothers' wife and step-daughter told officers that Mr. Brothers "made it well known to the family that they should not go through his belongings and to stay away from his property." (DHS Report of Investigation 004 at 4.) Mr. Brothers' wife told officers that she had never been in the attic located above the master bedroom closet. *Id.* These facts demonstrate Mr. Brothers' subjective expectation of privacy. That expectation was objectively reasonable. *See United States v. Chen*, 629 F. Supp. 263, 270 (S.D.N.Y. 1986) (defendant had objectively reasonable expectation of privacy in locked safe inside a locked closet in the open stairwell of the house he shared with his in-laws).

Mr. Brothers had a subjective, objectively reasonable expectation of privacy in the garage and garage attic. Mr. Brothers spent a lot of time in the garage. (Brothers Aff. ¶ 4.) The other members of his family did not. (DHS Report of Investigation 004 at 4.) Mr. Brothers had many of his personal items in the garage including, but not limited to, a hammock, a comfortable chair, a wood stove and his books. (Brothers Aff. ¶ 4.) His wife told police that she had never been in the attic above the garage. (DHS Report of Investigation 004 at 4.) His step-daughter told police that she and her sister had each been in the attic only once. *Id.* Thus, Mr. Brothers had a subjective expectation of privacy in the garage. Mr. Brothers' subjective expectation of privacy in the garage was objectively reasonable. *See United States v. Titemore*, 437 F.3d 251, 258-59 (acknowledging that Supreme Court has "squarely recognized as reasonable an expectation of

7

privacy within the curtilage surrounding the home" and setting forth factors for determining how far that reasonable expectation extends). Because Mr. Brothers had a subjective expectation of privacy that society is prepared to accept as objectively reasonable, he was subjected to a "search" when John Parker, a guest, invaded that privacy.

### B.  The Fourth Amendment applies to the searches performed by John Parker because he was acting as an agent of the government.

The searches that Mr. Brothers challenges were performed by John Parker, a private party, rather than directly by government agents. Private parties are bound by the requirements of the Fourth Amendment when they "operate as *de facto* state actors." *United States v. DiTomasso*, 81 F. Supp. 3d 304, 308 (S.D.N.Y. 2015).  Private parties may be considered *de facto* state actors under a number of different circumstances. *Id*. One such circumstance is when a private party performs a search "with an intent to assist law enforcement." *Id*. In order to determine whether a private individual intended to assist law enforcement, courts in this circuit look to: (1) "whether the defendant has demonstrated government knowledge and acquiescence in the search;" and (2) "whether the private searcher intended to assist law enforcement as opposed simply to achieve his own ends." *United States v. Longo*, 70 F. Supp. 2d 225, 259 (W.D.N.Y. 1999) (citing *United States v. Bennett*, 709 F.2d 803, 805 (2d Cir. 1983) and *United States v. Feffer*, 831 F.2d 734, 737 (7th Cir. 1987)).

Here, there is no dispute as to either the government's knowledge of the searches or John Parker's intent to assist law enforcement by conducting the searches. The police reports show that there was government knowledge and acquiescence in the searches that John Parker performed. Indeed, Homeland Security agents explicitly directed Mr. Brothers' family and John Parker "to look for anything suspicious and report it to them or the [New York State Police]."

(DHS Report of Investigation No. 001.) The police reports also show that John Parker intended to assist law enforcement by conducting the searches. John Parker telephoned the authorities and stated that "after agents told him to look for anything suspicious he located an attic access above the closet" in Mr. Brothers' bedroom. (DHS Report of Investigation 001 at 3.) Moreover, John Parker later told police that he "immediately thought of looking in the garage" when officers told the family to look for suspicious items. (DHS Report of Investigation No. 004 at 5.) He then looked in an attic access in the garage where he located various assault style rifles, a hunting rifle, numerous high capacity magazines and boxes with Clayton Brothers' name on them. (DHS Report of Investigation No. 001 at 3-4.) None of the items found was in plain view. Both the government's knowledge and Parker's intent are unambiguous. There is no question that Parker conducted the searches after the agents directed him to "look for anything suspicious." Therefore, John Parker was operating as a *de facto* government agent when he searched Mr. Brothers' property and the requirements of the Fourth Amendment apply.  *See United States v. Silva*, 502 F. Supp. 2d 143, 146, 149 (D. Mass. 2007) (private individual living in residence acted as *de facto* government when he searched brother's bedroom after officer told him to find "documents so that he could get a search warrant")

   **C.  The warrantless searches were per se unreasonable and none of the 'few specifically established and well-detailed exceptions' to the warrant requirement applies.**

   John Parker did not have a warrant to search Mr. Brothers' property. As discussed above, a "warrantless search is 'per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-detailed exceptions.'" *Kiyuyung*, 171 F.3d at 83 (quoting *Mincey*, 437 U.S. at 390). "If the defendant succeeds in showing

that the officers conducted a warrantless search, the burden shifts . . . to the government

to show that the search fell within one of the exceptions to the warrant requirement."

*Gagnon*, 230 F. Supp. 2d at 267-68.

 Here, the government will likely argue that the warrantless searches were valid as

parole searches or consent searches. For the reasons discussed below, neither of those

exceptions to the warrant requirement is applicable here. Accordingly, the searches were

unreasonable, Mr. Brothers' Fourth Amendment rights were violated, and the evidence

should be suppressed.

> 1. The searches were not valid as parole searches because they were not
>    performed by parole officers and because Mr. Brothers did not agree to
>    suspicionless searches.

Mr. Brothers was on parole when John Parker searched his home. The government will

likely argue that conditions of his parole rendered the warrantless search by John Parker

reasonable. That argument is without merit because Mr. Brothers did not consent to (a) searches

performed by individuals other than parole officers; or (b) suspicionless searches.

In *Samson v. California*, the Supreme Court held that a warrantless, suspicionless search

of a parolee pursuant to a California statute that requires every parolee to "agree in writing to be

subject to search or seizure by a parole officer or other peace officer at any time of the day or

night, with or without a search warrant and with or without cause" did not violate the Fourth

Amendment. *Samson v. California*, 547 U.S. 843, 846 (2006). The parolee had argued that the

search was constitutionally deficient because "the majority of States and the Federal Government

. . . hav[e] systems that permit parolee searches [only] upon some level of suspicion." *Id*. at 855.

The Court rejected that argument, referring to the parolee's "reliance on the practices of

jurisdictions other than California" as "misplaced" and noting that the fact "[t]hat some States

and the Federal Government require a level of individualized suspicion is of little relevance to our determination whether California's supervisory system is drawn to meet its needs and is reasonable." *Id.* As this language illustrates, the first step in analyzing whether a search of a parolee is reasonable is to look at the language of the search provision to which the parolee agreed. *See United States v. Freeman*, 479 F.3d 743, 747-48 (10th Cir. 2007) ("Parolee searches are . . . an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by the content of state law.)

Here, Mr. Brothers agreed to a search provision from the Pennsylvania Board of Probation and Parole, which reads "I expressly consent to the search of my person, property, and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole." (Penn. Bd. Prob. & Parole Conditions Governing Parole/Reparole ¶ 7.) It allows searches only by "agents of the Pennsylvania Board of Probation and Parole," not by other law enforcement officers, and certainly not by private individuals. Here, the challenged searches were not conducted by parole agents.  Thus, the searches were not authorized by the Pennsylvania search provision. Even if the Pennsylvania search provision governed searches performed by individuals other than parole agents, the searches here were not conducted with the requisite level of suspicion under Pennsylvania law. Pennsylvania law permits searches of a parolee's property only on "reasonable suspicion that the real or other property . . . contains contraband or other evidence of violations of the conditions of supervision." 42 Pa. Cons. Stat. Ann. § 9912(d)(2); *United States v. Perminter*,  No. 10-204, 2012 U.S. Dist. LEXIS 10836, at *38, 2012 WL 273349, at *12 (W.D. Penn. Jan. 30, 2012) ("Our Court of Appeals has recognized that even parolees who are subject to the standard Pennsylvania condition waiving a right to warrantless searches may not be subject to such warrantless searches absent reasonable suspicion.") (citing

11

*United States v. Baker*, 221 F.3d 438, 448 (3d Cir. 2000)). Here, Parker did not have reasonable suspicion that Mr. Brothers' property contained contraband or other evidence of violations of the conditions of supervision. Homeland Security officers had already searched Mr. Brothers' computer for evidence of the alleged violation they were investigating and had discovered nothing. (DHS Report of Investigation 001 at 3.) The agents articulated no basis for reasonable suspicion that Mr. Brothers possessed any other contraband. Rather, they essentially threw a Hail Mary pass by instructing Mr. Brothers' family to look for "anything suspicious." This is precisely the type of arbitrary, suspicionless search the Fourth Amendment was designed to prevent. Accordingly, the searches were not valid parole searches under the Pennsylvania search provision that Mr. Brothers signed.

The search provision from the State of New York Department of Corrections and Community Supervision reads "I will permit my Parole Officer to visit me at my residence . . . and I will permit the search and inspection of my person, residence and property." (DOCCS Cert. of Release to Parole Supervision Nov. 5, 2013.) That search provision does not authorize the searches that Parker performed for two reasons. First, unlike the California search provision in *Samson*, which allowed searches by "a parole officer or other peace officer," the New York search provision mentions only parole officers. Here, the searches were not performed by a parole officer. They were performed by John Parker. Thus, the searches were not authorized by the New York search provision. Further, New York law requires that parole searches performed by parole officers pursuant to this provision must be "rationally and reasonably related to the performance of the parole officer's duty." *United States v. Newton*, 369 F.3d 659, 665-66 (2d

Cir. 2004) (quoting *People v. Huntley*, 43 N.Y.2d 175, 181 (1977)).[5] In *Newton*, the Second

Circuit held that parole officers rationally and reasonably determined that a search was necessary

after receiving "information that Newton had a gun at his residence and had threatened his

mother and her husband." *Id*. at 666. Here, officers had no basis for suspicion that there were

weapons or ammunition on Mr. Brothers' property. Homeland Security had come to investigate

an allegation that had no connection whatsoever to weapons, an allegation of which the

Homeland Security officers found no evidence. Therefore, the searches were not valid searches

under the New York parole provision and the Court should exclude evidence of the items found

in the course of those searches.

       2.  <u>The searches were not valid consent searches because John Parker did not</u>
           <u>have common authority over the home, a substantial interest in the home, or</u>
           <u>permission to gain access to Mr. Brothers' bedroom or the garage.</u>

John Parker was a temporary guest at Mr. Brothers' home when he conducted the

searches. The government will likely argue that John Parker had the authority to consent to the

searches of Mr. Brothers' property. That argument is without merit because John Parker had no

such authority.

A warrantless search without probable cause does not violate the Fourth

Amendment if "the authorities obtained the voluntary consent of a person authorized to

grant such consent." *United States v. Elliot*, 50 F.3d 180, 185 (2d Cir. 1995). A non-

---

[5]      The Second Circuit has declined to "decide . . . whether *Samson* supplants our past precedent assessing the reasonableness of a parole search by reference to its relationship to parole duties." *United States v. Viserto*, 391 F. App'x 932, 934 (2d Cir. 2010); *see also United States v. Barner*, 666 F.3d 79, 86 (2d Cir. 2012). Because *Samson* applied California law to the search of a California parolee and explicitly stated that the laws of other jurisdictions were irrelevant to the California search, there does not appear to be a good argument that the *Samson* Court intended to overturn or abrogate the law applicable to parolee searches in jurisdictions with search rules more narrow than California's.

owner's consent is sufficient if he or she had (1) access to the area searched; *and* (2) either (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access. *United States v. McGee*, 564 F.3d 136, 140 (2d Cir. 2009). The Sixth Circuit has held that "'mature family member' may consent to a police search of their entire home because 'in common experience family members have the run of the house.' This common authority, however, would not extend to areas where a family member manifests an expectation of privacy by excluding other members from that area." *Silva*, 502 F. Supp. 2d at 149 (quoting *United States v. Clutter*, 914 F.2d 775, 777-78 (6th Cir. 1990)).

Here, John Parker did not have common authority to Mr. Brothers' home, a substantial interest in the home, or permission to gain access to Mr. Brothers' bedroom or the garage. He did not have the run of the house. Parker arrived in February 2014 with only a backpack. (Brothers Aff. ¶ 6.) He did not have a key to the house. *Id*. Other than the backpack, his belongings were in storage in Texas. *Id*. He did not assist with the bills and paid no rent. *Id*. Parker did not have permission to gain access to Mr. Brothers' bedroom or the garage. *Id*. ¶¶ 3, 5. He was allowed to sleep in Mr. Brothers' step-son's room. *Id*. ¶6. His permission to enter that bedroom did not extend to the other bedrooms. *Id*. ¶¶ 3, 5-6. At best, he had permission to access the bathroom, living room, and kitchen. Mr. Brothers had manifested an expectation of privacy by excluding other members of the household. Mr. Brothers "made it well known" that people "should not go through his belongings and [should] stay away from his property." (DHS Report of Investigation 004 at 4.) Therefore, Parker did not have the authority to consent to the search and the Court should exclude evidence of the items he found.   At the very least, if the government

14

disputes the facts as alleged above, Mr. Brothers requests that the Court order an evidentiary hearing.

## II.   THE COURT SHOULD EXCLUDE EVIDENCE OF MR. BROTHERS' STATEMENTS TO HOMELAND SECURITY AGENTS BECAUSE THE AGENTS SUBJECTED HIM TO A CUSTODIAL INTERROGATION BEFORE ADMINISTERING *MIRANDA* WARNINGS.

Mr. Brothers moves to suppress the statements he made to Homeland Security agents at the Camp Hill Pennsylvania State Correctional Institute on May 12, 2015, as well as any and all evidence derived therefrom as fruit of the poisonous tree.  In the alternative, Mr. Brothers requests an evidentiary hearing to resolve any factual disputes regarding this issue.[6]

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. To counteract the coercive pressure inherent in custodial interrogations, police officers are required to warn a suspect prior to questioning that he has the right to remain silent and the right to the presence of an attorney. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "*Miranda* warnings must be given when a person is interrogated while 'in custody.'" *United States v. Badmus*, 325 F.3d 133, 138 (2d Cir. 2003) (quoting *Miranda*, 383 U.S. at 444).

### A.  Mr. Brothers was in custody because he was an inmate for an unrelated matter at the time of the interrogation.

"Determining whether a defendant is 'in custody' involves 'two discrete inquiries . . . first, what were the circumstances surrounding the investigation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'" *Badmus*, 325 F.3d at 138 (quoting *Thompson v. Keohane*, 516 U.S. 99,

---

[6] A defendant challenging the constitutionality of a confession has the right to a fair hearing and a reliable determination on the issue of voluntariness. *Jackson v. Denno*, 378 U.S. 368, 377 (1964).

112 (1995)). Relevant circumstances include, among other factors, the interrogation's duration, its location, whether the defendant volunteered for the interview, whether the officers used restraints, whether weapons were present and especially whether they were drawn, and whether the officers told the defendant he was free to leave or was under suspicion. *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011).

The Supreme Court has held that the term "custody" under *Miranda* encompasses the detention of an individual on any charges, including charges unrelated and outside of the subject matter of the interrogation. *See Mathis v. United States*, 391 U.S. 1, 4 (1968) (rejecting the government's argument that *Miranda* only apply narrowly, where an individual is questioned about the case for which he or she is in custody for, and reasoning that the government's proposed distinction "goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights").

Here, there is no doubt that Mr. Brothers was in custody at the time of the interrogation. At the time of the interrogation, Mr. Brothers was incarcerated for a parole violation at the Camp Hill Pennsylvania State Correctional Institute. (DHS Report of Investigation 003). The parole violation for which Mr. Brothers was incarcerated was an unrelated matter to the current charges, but, as held in *Mathis*, *Miranda* warnings are required even if the defendant is detained for an entirely different offense. Therefore, there is ample evidence to show that Mr. Brothers was in custody at the time the agents began interrogating him, and that *Miranda* warnings were required before such an interrogation.

**B. The agents interrogated Mr. Brothers by engaging in words and actions reasonably likely to elicit an incriminating response.**

An interrogation under *Miranda* includes not only "express questioning" of the defendant, but also its "functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980). The standard for determining the admissibility of statements made by the defendant is whether or not the "words or actions on the part of the police… are reasonably likely to elicit an incriminating response." *Id.* "A practice that the police *should know* is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Id.* at 301-302 (emphasis added) (holding that a few off-hand remarks by the officers were not enough for them to reasonably know that defendant would "suddenly be moved to make a self-incriminating response");*United States v. McDaniel*, No. 03-Cr-550, 2003 U.S. Dist. LEXIS 14865, at *17-19, 2003 WL 22025872 1, 6-7 (S.D.N.Y. Aug. 29, 2003) (finding that officer's statement to defendant, "if there's something you want to tell me, I'm listening," made after officer informed defendant that police were executing a search warrant of defendant's home and that there were "possibly guns and drugs in the apartment" was reasonably likely to elicit an incriminating response).

It has been held that statements made by officers designed to clarify a "puzzling declaration" or statements "of routine booking nature" for the suspect do not qualify as interrogatory statements. *Andersen v. Thieret*, 903 F.2d 526, 532 (7th Cir. 1990) (not suppressing defendant's statement to police officer's question of "Who?," which was only intended to clarify defendant's previous statement, "I stabbed her"); *Pennsylvania v. Muniz*, 496 U.S. 582, 601-602 (1990) (not suppressing defendant's answers to officer's questions because the questions were intended to secure "biographical data necessary to complete booking or pretrial services").

But courts have found "interrogations" where an officer uses tactics designed to elicit incriminating statements. For example, officers have admitted to the practice of using

17

photographs as a way to "strike up a conversation" with defendants. *United States v. Broadway*, 580 F. Supp. 2d 1179, 1187 (D. Colo. 2008). In *Broadway*, a detective showed the defendant photographs of seized cocaine before issuing *Miranda* warnings. *Id.* After viewing the photographs, the defendant made several incriminating statements to the detective. *Id.* The court held that the conversation that the detective admitted to initiating "should reasonably have been expected to include incriminating statements" and therefore suppressed any statements the defendant made to the detective after seeing the drug photographs. *Id.*

In this case, agents arrived at Camp Hill Pennsylvania State Correctional Institute and told Mr. Brothers that guns were found on his property, and then showed Mr. Brothers photographs of guns and ammunition. (DHS Report of Investigation 3 at 3.) They also showed him receipts that purported to show Mr. Brothers as the purchaser of ammunition, optics and accessories for assault style rife from cheaperthandirt.com. *Id*. The agents did not make off-hand remarks, as was the case in *Innis*. They did not intend to clarify what Mr. Brothers said, as in *Andersen*, because Mr. Brothers made no initial statement. They were not asking routine booking questions, as in *Muniz*. Rather, as in *Broadway* the agents used the common police practice of displaying photographs, in order strike a conversation that would yield incriminating statements. Because the agents should have known that employing the use of photographs and receipts might very well elicit an incriminating statement and still failed to administer *Miranda* warnings, any and all statements Mr. Brothers made during that interrogation should be suppressed.

### C.    Mr. Brothers' statements were not "spontaneous utterances."

A spontaneous utterance is not protected by *Miranda* because it is made freely, voluntarily, and **not in response** to an interrogation. *United States v. Ayalew*, 563 F. Supp. 2d

409, 417 (N.D.N.Y. 2008).  Thus, a spontaneous statement is one that is not elicited by an interrogation or by "police conduct which should reasonably have been anticipated to evoke a declaration from the defendant." *People v. Lynes*, 49 N.Y.2d 286, 295 (1980).

In order for a statement to be considered a spontaneous utterance, it must not be in response to an officer's statement that is either declarative in nature or an officer's question that is not designed to elicit an incriminating response. *See People v. Ondrizek* 141 A.D.2d 770 (N.Y. App. Div. 2 1988) (finding the defendant's initial outburst that he was "glad it was all over," was a spontaneous utterance); *People v. Bonacorsa*, 115 A.D.2d 546, 546 (N.Y. App. Div. 2 1985) (affirming judgment where defendant was read his *Miranda* rights prior to making statement and finding that "the officer's comment was declarative in nature and could not reasonably be construed as one likely to elicit an incriminating response"); *People v. Huffman*, 61 N.Y.2d 795 (N.Y. 1984) (finding that "the police officer's statement, 'You're a liar', did not constitute express questioning but was declarative in nature" and affirming the determination that a response to that statement was not called for).

The agents wrote in their report that Mr. Brothers' statements were "spontaneously uttered." (DHS Report of Investigation 003 at 3.) However, because Mr. Brothers' statements were made during a custodial interrogation and were in response to the agents' tactics and questioning designed to elicit incriminating statements, the statements Mr. Brothers made to the agents were not truly spontaneous utterances. The agents showed Mr. Brothers receipts and photographs of guns and ammunition. These actions pressured Mr. Brothers into making incriminating statements. Mr. Brothers did not blurt out anything incriminating, as in *Ondrizek*. Moreover, the statement the agents made was not declarative in nature, as in *Bonacorsa* and

19

*Huffman*. Under these conditions, Mr. Brothers' statements cannot be held to be spontaneous utterances and must be suppressed as *Miranda* warnings were not issued.

At the very least, since there is a factual discrepancy between what the government alleges and what Mr. Brothers states, Mr. Brothers requests an evidentiary hearing. Factual disputes about these circumstances cannot be resolved without an evidentiary hearing. *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) ("An assertion that *Miranda* warnings were not given, when the government asserts the contrary…creates a specific factual dispute [that] cannot properly be resolved without an evidentiary hearing.").

### III. THE COURT SHOULD EXCLUDE EVIDENCE OF MR. BROTHERS' STATEMENTS MADE AFTER HIS UNEQUIVOCAL REQUEST FOR COUNSEL BECAUSE THE AGENTS VIOLATED MR. BROTHERS' FIFTH AMENDMENT RIGHT TO COUNSEL BY CONTINUING TO INTERROGATE HIM.

Mr. Brothers moves to suppress all statements made to Homeland Security agents at the Camp Hill Pennsylvania State Correctional Institute on May 12, 2015, after his unequivocal request for counsel. Alternatively, Mr. Brothers requests an evidentiary hearing to resolve any factual disputes regarding this issue.

In accordance with the Fifth Amendment, when an "individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona*, 384 U.S. 436, 473-474 (1966). In order to invoke his right to counsel, the defendant must have made "some statement that can reasonably be construed to be an expression of desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to

retained or appointed counsel." *Miranda*, 384 U.S. at 475. The Supreme Court has reversed when statements made by defendants were not suppressed after the defendant unequivocally invoked his right to counsel. *See Smith v. Illinois*, 469 U.S. 91, 96-97 (1984) (reversing because there was an unequivocal request for counsel where interrogating officers asked if the defendant would like to have counsel present at the interrogation, and the defendant uttered "uh, yeah. I'd like to do that" in response, and finding statements made afterwards in response to the interrogating officers' prolonged questioning should have been suppressed).

Here, Mr. Brothers was never even informed of his *Miranda* rights. During the interrogation, one of the agents stated, "You need a lawyer," to which Mr. Brothers responded, "Okay, can you get one for me?" thus invoking his right to counsel. (Brothers Aff. ¶ 8.) His request was blatantly denied, as one agent responded, "That is not our job." *Id*. There was nothing equivocal in the nature of Mr. Brothers' request. Mr. Brothers specifically asked the agent if the agent could get him a lawyer and the agent not only denied his request, but kept on questioning Mr. Brothers.

Mr. Brothers further asked for "official paperwork," to which the agent responded "No," and then continued asking questions. (Brothers Aff. ¶ 9.) At no point during the interrogation did Mr. Brothers waive his right to counsel, and there is nothing in the record to indicate that he did so. For these reasons, Mr. Brothers' statements made after his unequivocal request invoking his right to counsel should be suppressed. In the alternative, Mr. Brothers requests an evidentiary hearing.

**IV.    THE COURT SHOULD EXCLUDE EVIDENCE OF ACCUSATIONS OF CHILD MOLESTATION AGAINST MR. BROTHERS BECAUSE THAT EVIDENCE IS NOT RELEVANT TO THE CHARGES AGAINST HIM AND IS MORE PREJUDICIAL THAN PROBATIVE.**

The Homeland Security agents who instructed Mr. Brothers' family and John Parker to look for "anything suspicious" were at the home in response to an allegation that Mr. Brothers had molested a minor. (DHS Report of Investigation No. 001 at 3.) They came to the home to search his computers and electronic media for evidence of child exploitation. *Id*. As discussed above, they found no evidence supporting those allegations. *Id*. Mr. Brothers was never charged with any wrongdoing regarding the allegations. The government should be precluded from referring to the allegations of child molestation against Mr. Brothers.

Relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Here, Mr. Brothers is charged with five counts of Possession of Firearms and Ammunition by a Prohibited Person under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Dkt. No. 1.) Evidence that Mr. Brothers' step-daughter alleged that he molested her has no bearing at all on those charges. Therefore, it is not relevant and the Court should preclude the government from referring to it.

Even if the Court determines that the evidence is relevant, it should be precluded. Courts may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. Here, as discussed above, the evidence has no probative value because it has no bearing on the charges against Mr. Brothers. This lack of probative value is enormously outweighed by the extreme danger of unfair prejudice. Therefore, the Court should preclude the government from referring to the child molestation accusations against Mr. Brothers.

**V.    THE COURT SHOULD EXCLUDE EVIDENCE OF THE BALANCE IN MR. BROTHERS' BANK ACCOUNT BECAUSE THAT EVIDENCE IS NOT RELEVANT TO THE CHARGES AGAINST HIM AND IS MORE PREJUDICIAL THAN PROBATIVE**

The government may intend to introduce certain portions of Mr. Brothers' bank records to attempt to prove that Mr. Brothers purchased ammunition and gun accessories. If the Court is inclined to admit such evidence, the evidence should be redacted to exclude the balance in the bank account. The bank account balance—the amount remaining after each alleged purchase—is not relevant to the charges against Mr. Brothers. Moreover, such evidence could prejudice Mr. Brothers in the eyes of the jury. Therefore, Mr. Brothers moves to exclude evidence of the balance in his bank account.

**VI.    THE COURT SHOULD EXCLUDE EVIDENCE OF MR. BROTHERS' RESPONSE TO THE FORFEITURE ACTION BECAUSE ANY SUCH REFERENCE WOULD VIOLATE DUE PROCESS AND THE EVIDENCE IS MORE PREJUDICIAL THAN PROBATIVE.**

On June 16, 2015, United States Immigration and Customs and Border Protection sent a Notice of Seizure to Mr. Brothers at Camp Hill Correctional Facility. (Ex. H, Notice of Seizure.) The notice informed Mr. Brothers that firearms, parts, and ammunition valued at $15,030.00 had been seized from his home in Russell, New York, on or about April 30, 2014. *Id*. The attached inventory list included not only guns, ammunition, and accessories, but also camouflage body armor valued at $2,047.00. *Id*. The notice gave Mr. Brothers four options: (1) file a petition including "proof of your interest in or claim to the property" seeking remission of the forfeiture; (2) make an offer in compromise; (3) abandon the property by stating "that you have no claim to or interest in it;" or (4) request referral of the matter to the United States Attorney. *Id*. Mr. Brothers responded by requesting referral of the matter to the United States Attorney. *Id*. In a

23

handwritten attachment, he stated that he was "seeking legal coun[se]l in the above case. I cannot afford coun[se]l so I would ask that the government provide coun[se]l for me." *Id*.

Mr. Brothers moves to exclude any reference to his request for counsel. Any reference would violate his right to due process. "The substantive use of a defendant's invocation of counsel . . . before the defendant has the opportunity to offer [his] exculpatory story places [him] in an untenable position. 'If [he] does not take the stand, an inference of guilt by the jury is a possible inference; if [he] does take the stand, [his] credibility will already be in question and the jury might simply discount [his testimony] as fabricated.'" *United States v. Moreno*, 185 F.3d 465, 473 (5th Cir. 1999) (quoting *Chapman v. United States*, 547 F.2d 1240, 1243 n.5 (5th Cir. 1977)). Moreover, while the evidence might arguably be relevant, it would be vastly more prejudicial than probative. Therefore, the Court should exclude evidence of Mr. Brothers' request for counsel in response to the notice of forfeiture.

## CONCLUSION

For the reasons discussed above, the Court should (1) suppress physical evidence obtained from Mr. Brothers' home without a warrant in violation of his Fourth Amendment rights; (2) suppress evidence of statements made to law enforcement officials without *Miranda* warnings in violation of Mr. Brothers' Fifth Amendment rights and after his unequivocal request for an attorney; (3) preclude evidence of an investigation into child molestation allegations, (4) preclude evidence of the balance in Mr. Brothers' bank accounts, and (5) preclude evidence that Mr. Brothers invoked his right to counsel in response to a notice of seizure.

DATED:       October 29, 2015                    LISA A. PEEBLES
                                                 Federal Public Defender

                                    By:    */s/*
                                           Randi J. Bianco
                                           Assistant Federal Public Defender
                                           Clinton Exchange, 3rd Floor
                                           4 Clinton Square
                                           Syracuse, New York   13202
                                           (315) 701-0080