UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

   -v-                                            CASE NO. 5:15-CR-0198 (BKS)

CLAYTON BROTHERS,

                Defendant.
_____


**DEFENDANT CLAYTON BROTHERS' REPLY TO THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**


DATED:     November 19, 2015
                Syracuse, New York

                                                     Respectfully submitted,

                                                     LISA A. PEEBLES
                                                     Federal Public Defender


                           By:    Randi J. Bianco, Esq.
                                   Assistant Federal Public Defender
                                   Bar Roll No. 507514
                                   4 Clinton Square, 3rd Floor
                                   Syracuse, New York 13202
                                   (315) 701-0080

Defendant Clayton Brothers ("Mr. Brothers") submits this reply to the government's memorandum of law in opposition to Mr. Brothers' motion to suppress. The parties agree that an evidentiary hearing is required to resolve Mr. Brothers' motion to suppress physical evidence and his statements to law enforcement. (Dkt. No. 21 at 3.[1]) This reply will, accordingly, address only the legal issues raised in the government's opposition. Factual issues will be resolved after the evidentiary hearing scheduled for November 30, 2015, and will be addressed only briefly herein.

### I.   JOHN PARKER'S SEARCHES VIOLATED MR. BROTHERS' FOURTH AMENDMENT RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES.

Mr. Brothers argues that the physical evidence seized at his home must be suppressed because (A) he had a reasonable expectation of privacy; (B) John Parker was acting as an agent of the government; (C) there was no consent to the search; and (D) the searches were not valid parole searches because they were not supported by reasonable suspicion. (Dkt. No. 19.) The government argues that there is no merit to Mr. Brothers' arguments. (Dkt. No. 21.) For the reasons discussed below, Mr. Brothers' arguments have merit.

#### A. Mr. Brothers did not abandon his home and thus had a reasonable expectation of privacy in the premises.

The government argues that Mr. Brothers did not have a reasonable expectation of privacy in the items seized from his property because he had abandoned his home by the time the searches occurred. (Dkt. No. 21 at 10.) The government cites *United States v. Wellbeck*, 145 F.3d 493, 498 (2d Cir. 1998) and *United States v. Levasseur*, 816 F.2d 37, 44 (2d Cir. 1987). Both cases are distinguishable.

---

[1]   Citations to page numbers in parties' memoranda of law refer to the page numbers assigned by the Court's electronic filing system rather than to the page numbers in the original documents.

In *Wellbeck*, a defendant who knew that he was being observed by police officers got onto a train, put the shopping bag he was carrying under a seat, and then sat in a different row. *Wellbeck*, 145 F.3d at 495. Police officers boarded the train, approached the defendant, retrieved the bag, and repeatedly asked the defendant if the bag was his. *Id*. The defendant insisted that it was not. *Id*. Here, Mr. Brothers has never stated that he does not own his home.

In *Levasseur*, two members of a well-organized and active terrorist organization left their Ohio safehouse when a colleague informed them that the FBI was surrounding other members of the group. *Levasseur*, 816 F.2d at 40-41. In their subsequent trial, they moved to suppress evidence discovered in a footlocker at the safehouse. *Id*. at 42. The district court denied the motion, finding that the terrorists had abandoned the home. *Id*. The Second Circuit affirmed, finding that the district court's finding of fact was supported by a number of factors including, most importantly, the terrorists' "history of living underground and fleeing suddenly as the FBI drew near, plus [their] awareness that the FBI had just surrounded the Cleveland house and arrested their colleagues there." *Id*. at 44. It was these facts, not just the mere fact that the terrorists failed "to take their weapons, clothing, and personal belongings with them to Virginia," that indicated that the terrorists had abandoned the Ohio property. *Id*. Here, Mr. Brothers has no such history of living underground and suddenly fleeing the authorities. The mere fact that he left his home after a dispute with his family and failed to take some of his belongings with him, without the additional facts that existed in *Levasseur*, is an insufficient basis for the Court to conclude that he abandoned his home.

Mr. Brothers owns his home. He has not abandoned it. Therefore, the Court should find after the evidentiary hearing that Mr. Brothers had a reasonable expectation of privacy.

### B. John Parker was acting as an agent of the police because his intention was to assist law enforcement.

Mr. Brothers argues that the Fourth Amendment applies to the searches conducted by John Parker because Parker was acting as an agent of the police. (Dkt. No. 19 at 11-12.)  As noted in the moving papers, a private party acts as an agent of the police when he or she performs a search "with an intent to assist law enforcement." *United States v. DiTomasso*, 81 F. Supp. 3d 304, 308 (S.D.N.Y. 2015).

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971), cited by the government in its opposition (Dkt. No. 21 at 6), demonstrates the importance of the searcher's intent. In *Coolidge*, a woman's husband was suspected of murder. *Coolidge*, 403 U.S. at 445. In the wife's presence, police officers questioned the husband about his whereabouts on the night of the murder, asked whether he owned any guns, and asked whether he would take a lie-detector test. *Id*. at 445-46. He produced three guns and agreed to take a lie-detector test. *Id*. The police later described him as fully cooperative. *Id*. at 446. On a different day, two different police officers came to the house and asked the wife whether her husband had any guns. *Id.* at 465-86. She produced four guns. *Id.* at 486. She described "her own motive as that of clearing her husband, and [said] that she believed she had nothing to hide." *Id*. at 489. Her intent was *not* to assist law enforcement. Her intent was to clear her husband. Thus, the Court concluded, she was not acting as an agent of the government. *Id*.

Here, in contrast, John Parker was explicitly instructed to "look for anything ***suspicious***." (DHS Report of Investigation No. 001 at 3, emphasis added.) In response, he searched the property. He searched to find items that would cast suspicion on Mr. Brothers. There is no indication that he

had any other motive. Therefore, as discussed more fully in the moving papers, Parker was acting as an agent of the government when he searched the property.

### C. John Parker did not have the authority to consent to his own search of the property.

Mr. Brothers argues that there was no consent to the searches that John Parker performed. (Dkt. No. 19 at 16-18.) The government argues that there was consent. (Dkt. No. 21 at 9-10.) The government notes that Mr. Brothers' wife "had authority to authorize a search of the entire residence." *Id*. at 9. Whether that is true, and whether or not she gave such authorization, is a question of fact to be determined at the evidentiary hearing. The government further asserts that John Parker had authority to consent to his own searches. *Id.* at 9-10. The government cites a letter in which Mr. Brothers stated that he was happy to have John Parker in the home. *Id*. at 9. The government asserts that this "letter clearly shows he embraced having John Parker living with him." *Id.* at 10. Thus, the government argues, Parker had authority to consent to the searches. The defense notes that being happy to have someone in one's home is not the same thing as embracing having them there forever. It is not an indication of any intent to transform a visit into a residency. As with the issue of Mrs. Brothers' alleged consent, these are factual issues to be determined after the evidentiary hearing.

### D. John Parker's searches were not valid parole searches because any reasonable suspicion was erased by the total lack of evidence on his computer.

Mr. Brothers argues that the searches were not valid as parole searches. (Dkt. No. 19 at 13-16.) The government argues that John Parker's searches were valid parole searches. (Dkt. No. 21 at 10-12.) The government relies on *United States v. Chirino*, 483 F.3d 141, 147 (2d Cir. 2007.) That case is distinguishable. As discussed in Mr. Brothers' moving papers, parole searches under New York law must be "rationally and reasonably" related to parole duties. (Dkt. No. 19 at 15-16.) In

4

*Chirino*, unlike here, the parole search was rationally and reasonably related. There, authorities received information that Chirino, a gang member on probation, was tied to the sexual abuse of a 13-year old girl. Officers went to Chirino's residence and found him in bed with *two* underaged girls. The officers then searched the bedroom, where they located a gun. Chirino was ultimately convicted of being a felon in possession of a firearm. The Second Circuit affirmed the search, finding that it "was justified by Chirino's diminished expectation of privacy as a probationer *and* the officers' reasonable suspicion that Chirino was engaged in unlawful activity with [the 13-year-old] and the two young girls with whom he was found." *Chirino*, 483 F.3d at 149 (emphasis added).

Here, Mr. Brothers does not dispute that the initial search of his computer by his parole officer was an appropriate parole search under New York law, the terms of his parole, and the information authorities had received tying him to a possible sexual crime. But unlike Chirino, who was found in bed with not one but two underaged girls, Mr. Brothers passed the parole search test. Indeed, the valid parole search of Mr. Brothers' computer revealed no incriminating information at all. In the absence of any incriminating information, the parole officer had no authority under New York law to further search the property on a later date. Accordingly, John Parker's searches were not valid parole searches.

## II. THE EVIDENCE INTRODUCED AT THE HEARING WILL SHOW THAT MR. BROTHERS WAS SUBJECTED TO A CUSTODIAL INTERROGATION WITHOUT BEING ADVISED OF HIS *MIRANDA* RIGHTS.

Mr. Brothers argues that his statements to the police must be suppressed because he was subjected to a custodial interrogation with being advised of his *Miranda* rights. (Dkt. No. 19.) The government argues that there is no merit to Mr. Brothers' arguments. (Dkt. No. 21.) As the government concedes, there are factual disputes about this issue that must be resolved at an evidentiary hearing. *Id.* at 13. Mr. Brothers submits that the evidence introduced at the hearing will

5

show that he was subjected to a custodial interrogation without being advised of his *Miranda* rights.

### III. MR. BROTHERS SEEKS A FORMAL RULING BARRING THE INTRODUCTION OF EVIDENCE REGARDING CHILD MOLESTATION ALLEGATIONS.

Mr. Brothers requests that the Court exclude evidence of accusations of child molestation against him. (Dkt. No. 19 at 24-25.) The government states that it does not intend to enter any evidence of that alleged misconduct and that, accordingly, "that portion of the motion need not be decided." (Dkt. No. 21 at 3.) Mr. Brothers seeks a formal ruling barring the introduction of the evidence.

### IV. THE COURT SHOULD EXCLUDE EVIDENCE OF THE BALANCE IN MR. BROTHERS' BANK ACCOUNT BECAUSE THAT EVIDENCE IS NOT RELEVANT TO THE CHARGES AGAINST HIM AND IS MORE PREJUDICIAL THAN PROBATIVE.

Mr. Brothers has moved to exclude the evidence of the balance in his bank account as more prejudicial than probative. (Dkt. No. 19 at 26.) The government states that "[t]o the extent that there is irrelevant information on the bank records the government will redact them." (Dkt. No. 21 at 17.) Mr. Brothers asserts again that the bank balance should be excluded because it is not relevant to the charges against him and is more prejudicial than probative.

### V. MR. BROTHERS SEEKS EXCLUSION OF THE ENTIRETY OF HIS RESPONSE TO THE FORFEITURE ACTION BECAUSE IT IMPLICATES HIS RIGHT TO COUNSEL AND IS MORE PREJUDICIAL THAN PROBATIVE.

The government has agreed that the handwritten note on Mr. Brothers' response to a Notice of Seizure—a note that he was "seeking legal coun[se]l in the above case"—should be redacted. (Dkt. No. 21 at 17.) Mr. Brothers argues that his request to refer the matter to the United States Attorney should be excluded in addition to the handwritten note. The request for a hearing essentially implicates the same right-to-counsel rights asserted in the handwritten note. Moreover, the evidence is vastly more prejudicial than probative. There are many reasons that Mr. Brothers may have requested referral to the United States Attorney, including that he did not understand the forfeiture process and selected the option most likely to grant him time to speak to an attorney. However, a jury hearing that Mr. Brothers had not selected the abandonment option could conclude, erroneously, that Mr. Brothers' response was an admission that he owned the weapons. Therefore, Mr. Brothers seeks exclusion of the evidence.

DATED:   November 19, 2015           LISA A. PEEBLES
                                     Federal Public Defender

                                By:  /s/
                                     Randi J. Bianco
                                     Assistant Federal Public Defender
                                     Clinton Exchange, 3rd Floor
                                     4 Clinton Square
                                     Syracuse, New York   13202
                                     (315) 701-0080