

NEW YORK · VANCOUVER · CALGARY · EDMONTON · REGINA · WINNIPEG· TORONTO · MONTREAL

January 26, 2016

Hon. Brenda K. Sannes
United States District Court
Northern District of New York
James M. Hanley Federal Building
100 S. Clinton St.
Syracuse, NY 13261

**Re:   United States v. Clayton Brothers**
   **15-CR-198 (BKS)**

Dear Judge Sannes:

I write to respectfully request permission to file four documents for the Court's consideration, in deciding whether to suppress the evidence against Mr. Brothers. Mr. Brothers asserts that his prior lawyer overlooked this important evidence. These documents consist of the following:

   a)  A Traffic Violation Ticket, dated May 11, 2014 ("Traffic Violation Ticket") **(Exhibit "A")**;

   b)  A Parole Violation Report, dated May 6, 2014 ("Parole Violation Report") **(Exhibit "B")**;

   c)  A New York State Incident Report, dated April 23, 2014 ("Incident Report") **(Exhibit "C")**;

   d)  Telephone records from the Brothers' residence ("Telephone Records") **(Exhibit "D")**.

Each will be discussed in turn.


*Parole Violation Report*

The Defendant requests permission to submit a Parole Violation Report dated May 6, 2014, which the defense only received from the Government on January 21, 2016. This report is critical to the issue of whether or not Jamie Brothers consented to the search. During his testimony, Parole Officer Christopher Lawrence testified that on the night of April 28, 2014, he was contacted by Jamie Brothers who allegedly told him that she "found some weapons in the house." (Tr. 15) In sharp contrast, the Parole Violation Report contains a sworn statement from John Parker which states "I told Jamie and then called Chris Lawrence" (Supporting Deposition,

Page 1 of 2). This suggests that Jamie Brothers did not consent to the search, and certainly calls into question Parole Officer Lawrence's testimony. It is submitted that the Court should give more weight to Parker's statement, set out in the Parole Violation Report, in circumstances where his statement was made on April 29, 2014, shortly after the search. In contract, Parole Officer Lawrence's recollection during the hearing took place more than a year after the occurrence.

The Parole Violation Report also demonstrates that Mr. Brothers was charged with four parole violations, including the following:

> CHARGE #2: On 4/23/14 in St. Lawrence County, New York, Clayton BROTHERS violated Condition (4) of his release when he failed to notify his parole officer of his change in residence when he moved from his approved residence located at 861 Blanchard Hill Road, Russell, New York, to an unknown location although he had an immediate and continuing duty to make such notification to PO Lawrence.
>
> CHARGE #3: On 4/24/14 in St. Lawrence County, New York, Clayton BROTHERS violated Condition (3) of his release when he left the State of New York and/or an area defined in writing, specifically St. Lawrence County without the permission of his parole officer when he traveled to Winchester, Virginia, without the permission of PO Lawrence.

This supports Mr. Brothers' argument that there was an attenuated parole search. Simply stated, the fact that Mr. Lawrence already had grounds to violate Mr. Brothers on April 24, 2014, proves that he could not possibly conduct a valid parole search subsequent to that date given that he already had grounds to violate Mr. Brothers.

*New York State Incident Report*

The Defendant requests permission to submit a New York State Incident Report which states in pertinent part:

> On 04/24/14, I advised LAWRENCE of my investigation and he stated C. BROTHERS is a level 4 offender. LAWRENCE stated he could violate him based on the fact he had police contact on 04/10/14 for a V&T ticket and did not report it to him and based on the supporting depositions in this case.

This too supports Mr. Brothers' argument that there was an attenuated parole search. As noted above, the fact that Mr. Lawrence already had grounds to violate Mr. Brothers on April 24, 2014, proves that he could not possibly conduct a valid parole search subsequent to that date given that he already had grounds to violate Mr. Brothers.

*Telephone Records*

Telephone records from the Brothers household demonstrate that the State Police (tel. 315-379-0057) contacted the Brothers household at 10:04 a.m. EST (2:04 p.m. GMT) on April 28th, 2014.[1] The records further show that Christopher Lawrence (tel. 315-317-9590) called the Brothers household at 10:49 a.m. EST (2:49 p.m. GMT), and again at 10:59 a.m. (2:59 p.m. GMT). These incoming calls from law enforcement agents, on the morning of April 28th, 2014, support the Defendant's contention that John Parker was acting as an agent of law enforcement when he conducted the search that led to the guns.

***

For the reasons set out above, Mr. Brothers respectfully submits that the Court should reopen the suppression hearing and consider each of the aforementioned documents in determining whether the evidence against Mr. Brothers should be suppressed.

Respectfully,

Merchant Law Group LLP

By: ______________________
Daniel DeMaria

cc: AUSA Douglas G.N. Collyer

[1] The phone records display the time in Greenwich Meridian Time.

# EXHIBIT "A"

**B20031W3QV**

New York State - Department of Motor Vehicles
SIMPLIFIED INFORMATION/CERTIFICATE CONCERNING VIOLATION OF LAW RELATING TO VEHICLES

The people of the State of New York vs.

NEW YORK STATE POLICE

Local Police Code: 11501

Date of Arraignment:

Last Name(Defendant): PARKER
First Name: JONATHAN
M.I.: A
Number and Street: [redacted]
Apt. No.:
Photo Lic Shown: ☒
City: EL PASO
State: TX
Zip Code: 799120000
Owner is Oper.: ○
Lic. Class: C
Client ID Number: 33417433
Sex: M
Date Expires: 04/26/2016
Lic State: TX
Date of Birth: [redacted]/1991
Veh. Type:
Year: 2004
Make: CHEV
Color: WH
Plate Number: 97HPZ9
Reg State: TX
Registration Expires: 03/31/2013

Court Adjournment Record
Docket Number: 14050015.03

| Date From | Code | Date To | Requested By |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | Amount | Date | Receipt No. |
|---|---|---|---|
| Bail | | | |
| Refund | | | |
| Fine | | | |
| Surcharge | | | |

THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS

Time: 02:15PM
Date of Offense: 05/11/2014
IN VIOLATION OF: VTL
Violation Section: 0401 01A
Traffic Infraction ☒ Misd ○ Felony ○
Description of Violation: UNREGISTERED MOTOR VEHICLE
MPH: MPH ZONE:
US DOT#:
Comm Veh ○ Bus ○ HazMat ○
C/T/V Name: TOWN OF KEENE
County: ESSEX
Hwy.No: 73
Loc.Code: 1655
Street Name: STATE ROUTE 73
Hwy Type: 2
NCIC/ORI: 11501

AFFIRMED UNDER PENALTY OF PERJURY

[signature]
(Officer's Signature)

Officer operating radar

Date of Affirmation: 05/11/2014
Arrest Type: 1 - Patrol
Badge/Shield: 4621
Officer's Com./Div./Stat.: B311
Officer's Last Name: COFFIN
First Name: B
M.I.:

THIS MATTER IS SCHEDULED TO BE HANDLED ON THE APPEARANCE DATE BELOW IN:

KEENE TOWN COURT

Address: ST RTE 73 POB 89
City: KEENE
State: NY
Zip: 12942

☒ Return by mail before or in person on:
○ Must appear in person on:
Date: 06/16/14
Time: 06:00PM

FOR COURT USE ONLY

Court Code: NY015121J
Justice Code: 15215
Date Adjudicated: 6/30/14
Date Sentence Imposed: 6/30/14
Charge Convicted of ○ AS ABOVE ○ VTL ○ Other
Disposition/Sentence:
Fine $ 6
Surcharge $
Bail Forfeiture Amount $ Date
○ LIC ○ REG ○ Rev ○ Susp ○ Mand. ○ Perm DAYS/MONTHS/YEAR
DWI Test Type:
DWI Test Results:

**SECTION 1807 OF THE VEHICLE AND TRAFFIC LAW PROVIDES THAT DEFENDANT, IN CERTAIN CASES, MUST BE INFORMED IN SUBSTANCE AS FOLLOWS:**

"A plea of guilty to this charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a penalty, but in addition your license to drive a motor vehicle or motorcycle, and your certificate of registration, if any, are subject to suspension and revocation as prescribed by law."

To Judge or Clerk of Court: Checkmark the appropriate box or boxes below.

I HEREBY CERTIFY THAT:

☐ Upon arraignment, that the above instruction was given orally to the defendant.

☐ The defendant appeared in response to a ticket upon which the above instructions were printed in bold type, in accordance with Section 1807 of the Vehicle and Traffic Law.

☐ Defendant entered a plea of guilty in writing pursuant to Section 1805 of the Vehicle and Traffic Law.

I hereby certify that the information given on this certificate is a true abstract from the records of this court.

Signature of Judge or Clerk of Court: Date:

Name of Judge:

Supporting Deposition Issued: None ☒ Speeding(Gen101) ○ Non-Speeding(Gen101a) ○

UTC-1.7(4/02)

# EXHIBIT "B"

Interstate Commission for Adult Offender Supervision (Revised 2/4/08)

# OFFENDER VIOLATION REPORT

| To: PENNSYLVANIA | Date: 5/6/2014 | Type of supervision: ☒ Parole ☐ Probation ☐ Other: | Is this case: ☐ Registered Sex Offender ☐ Victim sensitive |
|---|---|---|---|
| From: New York State | Phone #: (518) 457 - 7566 | Fax #: (518) 485 - 8950 | |

**OFFENDER INFORMATION**

| Offender's full name (last, first, MI): BROTHERS, CLAYTON | Offender number: (DIN #) [redacted] Sending state#:(NYSID#) [redacted] | Receiving state#: |
|---|---|---|

AKA:

| SS#: (if available) | FBI#: (if available) [redacted] | Sex: M | Race: WHITE | DOB: [redacted] |
|---|---|---|---|---|

**TYPE OF REPORT** *(check all that apply)*

- ☒ Violation(s) without arrest
- ☐ Arrest
- ☒ Absconder
- ☐ Conviction

**RECOMMENDATION**

- ☐ Remain under supervision
- ☐ Order offender to return to sending state
- ☒ Warrant requested

**OFFENDER CUSTODY STATUS & LOCATION**

- ☐ In custody, current location:
- ☐ On bond, amount: $
- ☐ ROR

**CURRENT RESIDENCE**

| Offender resides with – name, relationship: JAIME BROTHERS, wife | | Phone #: (315) 302-4042 | |
|---|---|---|---|
| Address: 861 BLANCHARD HILL RD | City: RUSSELL | State: NY | Zip: 13684- |

**EMPLOYMENT STATUS**

- ☐ Employed full time
- ☒ Unemployed/reason: SUBJECT HAS ABSCONDED

Offender's employment:

| Employer's street address: | City: | State: | Zip: | Telephone #: |
|---|---|---|---|---|

| Offender's employment supervisor: | Offender's job title: |
|---|---|

**NEW ARREST INFORMATION**

| Date: | City: | County: Case #: | Arresting Agency: Case #: |
|---|---|---|---|

Offense description (attach offense report, if available):

## CURRENT SPECIFIC VIOLATIONS

*(Specify violation and provide all details to support the violation below*, including evidence, witnesses' names, and witnesses' contact information)*

| Violation | Date occurred |
|---|---|
| 1 THREATENED SAFETY/WELLBEING OF LAURYN HICKS (DOB 3-19-99) WHEN HE GRABBED HER BREASTS AND VAGINA, THROUGH HER CLOTHING, AGAINST HER WILL. | 2/23/2014 |
| 2 ON 4-23-14 SUBJECT CHANGED HIS APPROVED RESIDENCE AT 861 BLANCHARD HILL RD, RUSSELL, NY TO AN UNKNOWN LOCATION WITHOUT NOTIFYING HIS P.O. | 4/23/2014 |
| 3 ON 4-24-14 SUBJECT LEFT THE STATE OF NEW YORK WITHOUT THE PERMISSION OF HIS P.O. WHEN HE TRAVELLED TO WINCHESTER, VIRGINIA WITHOUT THE PERMISSION OF P.O. LAWRENCE. | 4/24/2014 |
| 4 ON 4-29-14 SUBJECT VIOLATED THE CONDITIONS OF HIS RELEASE WHEN HE POSSESSED A RIFLE WITHOUT THE PERMISSION OR KNOWLEDGE OF HIS P.O. | 4/29/2014 |
| 5 | |

*Details of current violation(s): WITH REGARD TO CHARGE # 1 PLEASE REFER TO ATTACHED DEPOSITION OF LAURYN HICKS DATED 4-23-14. WITH REGARD TO CHARGE # 2 UPON BEING CONFRONTED W/ ALLEGATIONS OF SEXUAL MISCONDUCT W/ STEP DAUGHTERS AND NIECE, SUBJECT LEFT HIS APPROVED RESIDENCE ON 4-23-14 AND HAS NOT RETURNED SINCE. WITH REGARD TO CHARGE #3 SUBSEQUENT TO SUBJECT LEAVING HIS APPROVED RESIDENCE HE WAS TRACKED THRU HIS USE OF A DEBIT CARD HE USED AT SEVERAL LOCATIONS WITH USE OF THE CARD DOCUMENTED IN WINCHESTER VIRGINIA. SUBJECT HAD BEEN SUSPECTED OF POSSIBLY TRAVELLING TO HOME OF GRANDMOTHER, BETTY FORBES, WHO LIVES 2 HOURS FROM WINCHESTER AT 4 INGALLS CIRCLE. CLIFTON FORGE, VA. WITH REGARD TO CHARGE # 4 A SEARCH OF SUBJECT'S RESIDENCE/PROPERTY RESULTED IN NUMEROUS CONTRABAND ITEMS BEING FOUND, SPECIFICALLY SEVERAL ASSAULT RIFLES, HIGH CAPACITY MAGAZINES, BODY ARMOR, LARGE BAG OF AMMUNITION. PLEASE REFER TO ATTACHED NYS INCIDENT REPORT # [illegible] FOR DETAILED LIST OF ITEMS SEIZED.*** CHARGES RELATED TO THE " FORCIBLE TOUCHING" OF LAURYN HICKS AND POSSESSION OF THE WEAPONS ARE CURRENTLY PENDING W/ NEW YORK STATE POLICE. WITNESSES: JAMIE BROTHERS, LAURYN HICKS, ROBYN HICKS, AND JOHN PARKER RESIDE AT CASE ADDRESS # 315-302-[illegible]. PO LAWRENCE 315-317-[illegible]. NYSP INV. NYE 518-605-1669.

| Previous Violation | Date of Report | Date of Response |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

Offender's compliance to prior sanctions following violation:

## ABSCONDING INFORMATION

Last known address: 861 BLANCHARD HILL RD. RUSSELL, NY 13684

Last known employment information: Commercial Press, 6589 US HWY 11, Canton NY 13617 # 315-274-

Date of last face-to-face contact with offender: **4/23/2014**

Details of how offender was determined to be an absconder: **Contact with New York State Police Inv. Nye indicates the subject was being investigated for sexual abuse that had reportedly been ongoing for approx. 8 yrs, dating to when he resided in Texas. Follow-up investigation by P.O. revealed the subject left the resdience when he was confronted with allegations by his wife. He admitted the abuse and apologized, however, met with rejection, he left the residence on his motorcycle on 4-23-14 and has yet to return. Since then, he has been tracked through debit card use. Last use of the card was on 4-24-14 at a gas station in Winchester, VA.**

**NEW CONVICTION INFORMATION**

| | | | | |
|---|---|---|---|---|
| Date of sentence: | Offense(s): | ☐ Felony | ☐ Misdemeanor | ☐ Other |
| Disposition: | ☐ Guilty | ☐ Not guilty | ☐ No contest | ☐ Charges withdrawn |
| Name and location of court: | | | | Case #: |
| Sentence: | | | | |
| If incarcerated, name and address of holding agency: | | | | |

**ATTACHMENTS**

Check all information that is attached to this form:

- ☒ Police report
- ☐ Technology report
- ☐ Preliminary findings report
- ☒ Other documentation regarding violation

| Supervising Officer/Location: | Date: | Compact Administrator/Designee: | Date: |
|---|---|---|---|
| PO LAWRENCE WATERTOWN SUB OFFICE | 5-6-14 | | |

STATE OF NEW YORK- DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

VIOLATION OF RELEASE REPORT

| Warrant Issued: | | No Warrant: | XX |
|---|---|---|---|
| Name: | BROTHERS, Clayton | Date Released: | 10/3/13 NYS Supervision |
| NYSID#: | [redacted] | Sentence ME: | 12/13/15 |
| Institution: | Interstate Coop | PRS ME: | |
| DIN#: | [redacted] | Date of Warrant: | |
| Date of Birth | [redacted] | Warrant #: | |
| Offense: | Robbery 2nd | Date Enforced: | |
| Indeterminate Sentence. | 5-0-0/20-0-0 | Location: | |
| Determinate/PRS Sent: | | Compas Level: | 4 |

Delinquency Date: 2/23/14

Since the release of the above named individual, the subject has violated the conditions of release in the following manner,

CHARGE #1: On 2/23/14 in St. Lawrence County, New York, Clayton BROTHERS violated Condition (8) of his release when his behavior threatened the safety and/or well being of himself or others when he grabbed the breasts and vagina of his stepdaughter, Lauryn Kaitlyn Hicks (DOB 3/19/99), against her wishes and without her permission. Said contact occurred while Lauryn Hicks was clothed.

CHARGE #2: On 4/23/14 in St. Lawrence County, New York, Clayton BROTHERS violated Condition (4) of his release when he failed to notify his parole officer of his change in residence when he moved from his approved residence located at 861 Blanchard Hill Road, Russell, New York, to an unknown location although he had an immediate and continuing duty to make such notification to PO Lawrence.

CHARGE #3: On 4/24/14 in St. Lawrence County, New York, Clayton BROTHERS violated Condition (3) of his release when he left the State of New York and/or an area defined in writing, specifically St. Lawrence County without the permission of his parole officer when he traveled to Winchester, Virginia without the permission of PO Lawrence.

CHARGE #4: On 4/29/14 in St. Lawrence County, New York, Clayton BROTHERS violated Condition (9) of his release when he possessed a rifle without the permission of PO Lawrence or without a satisfactory explanation for possession.

**POSSIBLE WITNESSES:**

PO Lawrence
PO Tousignant
SPO Knapp
Jaime Brothers
Robyn Hicks
Lauryn Hicks
Jonathan Parker,
NYSP Investigator Nye
NYSP Investigator Disalvo

**DOCUMENTS PROVIDED:**

Community Supervision Release Papers

CL/mpr
T: 5/7/14

STATE OF NEW YORK – DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

**NAME: BROTHERS, Clayton** **NYSID:** [redacted] **DIN:** [redacted]

| Time On: | Years | 00 | Months | 04 | Days | 10 |
|---|---|---|---|---|---|---|
| Time Owed: | Years | 01 | Months | 09 | Days | 20 |

**CASE SUMMARY**

**CURRENT SENTENCE AND CRIME OF CONVICTION**

Subject is a 38 year old male who is an Interstate Coop Case from the State of Pennsylvania and has been under New York State supervision since 10/3/13 until such time as he absconded from supervision as indicated in the report herein.

Records reflect subject is serving a controlling 5-0-0/20-0-0 year sentence subsequent to a plea of guilty to the offense of Robbery 2nd Degree.

Available records are limited, however indicate that subject, along with two other co-defendants did in the course of committing a theft, unlawfully enter an occupied residence and threaten the occupants with serious bodily injury. The record further indicates subject and his co-defendants were in possession of a 9 mm handgun as well as shotguns when they committed the robbery and also did fire said firearms off numerous times outside the residence during the robbery in an attempt to scare the victims.

**PRIOR PAROLE VIOLATIONS ON THE INSTANT OFFENSE**

The record would not indicate any prior parole violations.

**CRIMINAL HISTORY**

Available records are minimal. The information in the packet we received from the Interstate Bureau is, "OFFENSE HISTORY AND PATTERN: Juvenile: One placement for Aggravated Assault. Adult: History of drug and weapon offenses. One prior incarceration in Maryland. Current offenses are Robbery, Burglary, and Criminal Conspiracy. Open detainers for Resisting Arrest, VOP and FTA-Theft".

**DESCRIPTION OF CURRENT VIOLATIVE BEHAVIOR**

On 4/24/14, this writer was contacted by New York State Police Investigator Nye indicating he had been contacted by subject's wife, Jamie, indicating our subject had reportedly been involved in the sexual abuse of his stepdaughters, Lauryn Hicks (DOB 3/19/99), Robyn Hicks (DOB 11/1/94) as well as subject's niece, Teresa Alvares, with the abuse dating back seven or eight years when the family all lived in Texas. The investigation revealed the abuse came to light on or about 4/22/14 when Lauryn Hicks advised her sister's boyfriend, Jon Parker, that the abuse was occurring. Additionally, the investigation indicated the abuse had been continuing as recently as this February when subject was reportedly sitting on the couch next to Lauryn when he began to crowd her on the couch and reportedly grabbed her breasts and vagina over the top of her clothes.

Further investigation revealed that when subject was confronted with the sexual abuse allegations, subject left his approved residence on 4/23/14 on his motorcycle and has not returned to his approved residence, nor has he notified his parole officer of any change of residence.

Subsequent to continued investigation and interviews with Investigator Nye and Jamie Brothers, it was discovered that subject had utilized his debit card at a gas station in Winchester, Virginia on 4/24/14, with subject not notifying or receiving permission from his parole officer to leave the county, much less the state. A review of the depositions given to the New York State Police by subject's stepdaughters indicated that he had reportedly taken a video of one of them while she

was in the shower in the past, therefore a search of subject's computer equipment was conducted in the event he could be in possession of inappropriate material involving his stepdaughters or other minor children. A search of the data on the hard drive of the computer resulted in a finding of numerous files that were deleted with highly advanced software that left no trace of their original data. Given the emotional state of Mrs. Brothers and Robyn and Lauryn Hicks, a more extensive search was not conducted at that time; however it was requested that if they were to find any materials on the property that were suspect in nature, or if subject were to contact them, that they were to notify this writer. On 4/28/14 at approximately 10:00 pm this writer received notification from Mrs. Brothers that a long gun and other items were found in a crawl space above the closet in subject's bedroom. On 4/29/14 this officer responded to the residence at 861 Blanchard Hill with New York State Police Investigator Nye. It was at that time when Robyn Hicks boyfriend, Jon Parker, who had recently moved into the home, showed us the items that were found in the crawl space and we searched the garage area. The items found were inclusive of three assault rifles, a .50 caliber muzzle loader, Savage Arms .22 long rifle, numerous 20 and 30 round magazines, numerous rounds of ammunition as well as the body armor. A detailed list of the items is attached hereto to this report.

The above items were secured for evidence by New York State Police Investigator Nye with charges pending for the possession of the rifles and high capacity magazines in addition to charges related to subject's unwanted touching of Lauryn Hicks.

## GENERAL ADJUSTMENT TO PAROLE SUPERVISION

Approved for supervision in New York State on 10/3/13 via Interstate Compact, this writer met with the subject and instructed him as to his conditions of release and imposed special conditions. On subsequent dates in the course of supervision, this writer reviewed the conditions with the subject and he expressed an understanding of his obligations.

Following his release the subject established a residence with his wife and stepdaughter at 861 Blanchard Hill Road, Russell, New York, where he remained until being cited for this violation.

During his supervision, the subject was initially employed as a graphics artist with Airview Graphics out of Houston, Texas and had been working out of his residence in Russell with said company. He did however obtain new employment with Commercial Press doing graphics and computer work approximately a week prior to absconding from his approved residence on Blanchard Hill.

## PRESENT STATUS

Subject is currently considered an absconder as he has yet to return to his approved residence since he left on 4/23/14.

## RECOMMENDATION

His whereabouts currently unknown coupled with the serious nature of additional allegations raises serious concerns as to community safety. It is the recommendation of this officer that a warrant for his arrest be issued.

| | | | |
|---|---|---|---|
| [signature] 5/7/14 | Date | [signature] 5/7/14 | Date |
| Christopher Lawrence<br>Parole Officer | | D. Scott Knapp<br>Senior Parole Officer | |

CL/mpr
T: 5/7/14

[illegible]

STATE OF NEW YORK

[illegible]

[illegible]

[illegible]

1. [illegible]
2. [illegible]
3. [illegible]
4. [illegible]
5. [illegible]
6. [illegible]
7. [illegible]
8. [illegible]
9. [illegible]
10. [illegible]
11. [illegible]
12. [illegible]

13. [illegible]

[illegible]

New York State - DOCCS
Community Supervision
SPECIAL CONDITIONS OF RELEASE TO PAROLE SUPERVISION

Page: 1
Name: BROTHERS,CLAYTON NYSID: 06043746S
Date of Release: 07/13/2015 Supervision Maximum: 08/28/2018

I, BROTHERS,CLAYTON , acknowledge that the following Special Conditions have been imposed upon me and that these Special Conditions will remain in effect until the termination of my legal period of supervision 08/28/2018 unless otherwise amended, in writing, by the Department of Corrections and Community Supervision.

[22]
- I WILL report to my assigned Parole Officer on Thursday of each and every week, or as directed, between the hours of 12:00pm and 7:00pm.

I WILL report at location: Canton Police Dept.
Phone: (315) [illegible]

Other reporting conditions: ______

[55]
- I WILL submit to random urinalysis testing as directed by my Parole Officer.

[60]
- I WILL NOT purchase, possess or consume any alcoholic beverages. Further, I will not enter or remain in any establishment whose primary purpose is the sale or consumption of alcohol.

[73]
- I WILL provide child support for my dependent children and will be in compliance with any court-imposed child support orders in effect.

[44]
- I WILL remain in the geographic confines of the county(s) of St. Lawrence ______. If I travel outside of the above mentioned county(s), I will obtain a travel pass from my Parole Officer granting permission for such travel.

[61]
- I WILL remain in my approved residence from 9:00 pm to 7:00 am, seven days a week. Exceptions to my curfew may be permitted with PRIOR approval from my Parole Officer.

[62]
- I WILL live and remain at my approved residence and have no unauthorized visitations from others without the prior approval and knowledge of my Parole Officer.

[94]
- I WILL comply with all court orders.

Releasee Initials: [illegible] Witness Initials: [illegible] Date: 10/06/2015

New York State - DOCCS
Community Supervision
SPECIAL CONDITIONS OF RELEASE TO PAROLE SUPERVISION

Page: 2
NYSID: 00043744S
Supervision Maximum: 08/28/2016

Name: BROTHERS,CLAYTON
Date of Release: 07/12/2013

I hereby certify that I have read and understand the above Special Conditions of my release and that I have received a copy of these Special Conditions.

Signed this 3rd day of October, 2013

Releasee: [illegible] Witness: [illegible] #1874

1) copy to Releasee 2) copy to Area Office 3) copy to Central Office

FORM 9023A (09/2008) Print Date: 10/04/2013

DEPL-4 (5/00) — New York State Police

**SUPPORTING DEPOSITION (CPL § 100.20)** — PAGE 1 OF 2

THE PEOPLE OF THE STATE OF NEW YORK
— VS. —

Clayton Brothers

DEFENDANT(S)

| LOCATION OF INCIDENT: | LOCATION OF DEPOSITION: |
| --- | --- |
| STATE OF NEW YORK Criminal COURT | STATE OF NEW YORK |
| COUNTY OF St. Lawrence | COUNTY OF St. Lawrence |
| Town OF Russell | Town OF Russell |

On DATE 04/29/14 at TIME 10:30am I, FULL NAME John A. Ratte, [redacted]

state the following: I am currently at my residence @ 861 Blanchard Hill Rd, Russell, NY speaking w/ Inv. Ryan of the NYSP regarding guns I found. Yesterday, Clayton Brother's Parole Officer Chris Lawrence and 3 other Federal Agents were at my place looking through computers belonging to Clayton Brothers. I live here with my girlfriend, Katelyn Hicks, her sister, Lauren Hicks, and their mother, Jamie Brothers. Clayton is married to Jamie and is the stepfather to Lauren & Katelyn. Early last week, we found out Clayton had been molesting Lauren and Clayton left the area. Yesterday after Chris Lawrence & the Federal Agents left, they told me to look around the property for anything suspicious. Last night, I found a crawl space above the closet in Jamie & Clayton's bedroom. I climbed up into the crawl space and found a .50 cal black powder rifle, a clear bag containing hundreds of [illegible]

**NOTICE**
(Penal Law § 210.45)

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury
this 29 day of April, 2014 — X [signature]
SIGNATURE OF DEPONENT

- OR -

* Subscribed and Sworn to before me
this ______ day of ____________, ______

* This form need to be...

WITNESS [signature] NYSP — TIME ENDED 10:53am
PRINT NAME OF PERSON TAKING DEPOSITION

2014-05-06 12:57 NYSP 3153790069 >> 3153936063 P 1/2

[illegible] Page 2 of 2

SUPPORTING DEPOSITION CONTINUATION SHEET

[illegible]

[illegible] of [illegible] and [illegible]

I told Travis and then called Chris Lawrence.

This morning, before Chris Lawrence showed up,

I went out into the garage behind the house.

I made my way to the back corner of the

garage and located a sliding piece of plywood

on the siding. I slid the piece of plywood over [illegible]

located [illegible] in the corner. I [illegible]

up into the [illegible] by the [illegible]. I

found 3 assault rifles, a regular rifle, and

numerous large capacity clips. 2 of the

assault rifles were wrapped in a white and [illegible]

bag. One of the rifles was [illegible]. The other

assault rifle was in a white plastic bag with

the other. The regular rifle was just laying

there. While looking around, I found [illegible]

papers with [illegible] name on them.

I turned all the property over to State

Troopers who turned them to the State Police.

[illegible word] did not belong to me, [illegible]

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

[signature] [signature]

[illegible] 2014-05-08 [illegible]



| 1. Agency | 2. Dist/Precinct | INCIDENT REPORT | 3. ORI | 5. Case No. | 6. Incident No. |
|---|---|---|---|---|---|
| 02 TROOP B - ZONE 2 | [illegible] | | NY[illegible] | | [illegible] |

| 7,8,9. Date Reported (Day, Date, Time) | 10,11,12. Occurred On/From (Day, Date, Time) | 13,14,15. Occurred To (Day, Date, Time) |
|---|---|---|
| TUESDAY [illegible] | SATURDAY [illegible] | TUESDAY [illegible] |

| 16. Incident Type | 17. Business Name |
|---|---|
| CRIM/WEAPON-POSSESSION OF WEAPON | |

19. Incident Address (Street Name, Bldg No., Apt. No.)
[illegible] BLANCHARD HILL ROAD

20. City/State/Zip
RUSSELL NEW YORK 136[illegible]

| 21. Location Code (FBI,RTD) | 22. No. of Victims | 24. No. of Suspects | 25. Victim also Complainant? |
|---|---|---|---|
| RUSSELL TOWN 4[illegible] | 0 | 1 | |

Location Type
SINGLE FAMILY HOME

## ASSOCIATED PERSONS

| 32. TYPE | Name (Last, First, Middle, Title) | DOB | Street Name Bldg., Apt.No., City, State, Zip | Res Phone Bus Phone |
|---|---|---|---|---|
| SUSPECT | BROTHERS, CLAYTON, T | [redacted] | [illegible] BLANCHARD HILL ROAD RUSSELL NY 136[illegible] | (315)[illegible] |

## SUSPECT

| Person ID # | 34. Type | 35. Name (Last, First, Middle) |
|---|---|---|
| [redacted] | SUSPECT | BROTHERS, CLAYTON, T |

| 37. Apparent Condition | 38. Address (Street Name, Bldg., Apt. No., City, State, Zip) |
|---|---|
| | [illegible] BLANCHARD HILL ROAD RUSSELL NY 136[illegible] |

| 39a. Home Phone | 39b. Work Phone | 40. Social Security | 41. DOB | 42. Age | 43. Gender | 44. Race |
|---|---|---|---|---|---|---|
| (315)[illegible] | | [redacted] | [redacted] | 3[illegible] | MALE | WHITE |

| 45. Ethnicity | 46. Skin | 47. Occupation |
|---|---|---|
| NOT APPLICABLE | | |

| 48. Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses | 53. Build |
|---|---|---|---|---|---|
| [illegible] | [illegible] lbs. | BLOND | BLUE | UNKNOWN | MEDIUM |

| 54. Employer/School | 55. Employer Address |
|---|---|
| | NY |

56. Scars/Marks/Tattoos (Description)

36. Alias/Nickname/Maiden Name

| Last Name | First Name | Middle Name |
|---|---|---|
| | | |

## PROPERTY

| 58. Name | Property Status |
|---|---|
| BROTHERS, CLAYTON T | RECOVERED |

| Property Type | Make or Model / Drug |
|---|---|
| FIREARMS | COLT LAW ENFORCEMENT CARBINE |

| Serial No. | Qty/Measure | Value |
|---|---|---|
| L[illegible] | | $ 1,[illegible] |

Description
Item #1-Colt Law Enforcement Carbine w/ Nikon Scope, s/n L[illegible], 5.56 mm cal.

Page 1 of 6 [illegible]/2014 [illegible]

| Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| **Property Type** | **Make or Model / Drug** | |
| FIREARMS | DPMS CARBINE WITH SCOPE | |
| **Serial No.** | **Qty/Measure** | **Value** |
| F167433K | | $ 1,850.00 |
| **Description** | | |
| -item#2-DPMS Carbine with scope, sight mark laser, s/n F167433K, 5.56 mm cal | | |

| SR. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| **Property Type** | **Make or Model / Drug** | |
| FIREARMS | SIG SAUER PISTOL | |
| **Serial No.** | **Qty/Measure** | **Value** |
| TP000875 | | $ 1,000.00 |
| **Description** | | |
| -item#3-Sig Sauer Pistol with red dot sight and laser, s/n TP000875, 5.56 mm cal. | | |

| SR. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| **Property Type** | **Make or Model / Drug** | |
| FIREARMS | THOMPSON CENTER ARMS .50 CAL | |
| **Serial No.** | **Qty/Measure** | **Value** |
| K344511 | | $ 200.00 |
| **Description** | | |
| -item#4-Thompson Center Arms .50 cal Hawken Muzzleloader Rifle, s/n K344511 | | |

| SR. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| **Property Type** | **Make or Model / Drug** | |
| FIREARMS | SAVAGE ARMS .22 LONG RIFLE | |
| **Serial No.** | **Qty/Measure** | **Value** |
| UNKNOWN | | $ 200.00 |
| **Description** | | |
| -item#5-Savage Arms .22 long rifle [illegible], s/n unknown | | |

| SR. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| **Property Type** | **Make or Model / Drug** | |
| FIREARMS | 30 ROUND MAGAZINES | |
| **Serial No.** | **Qty/Measure** | **Value** |
| NONE | | $ 200.00 |
| **Description** | | |
| -item#6-18 black p-mag .223/5.56 30 round capacity magazines filled to various capacity | | |

| SR. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| **Property Type** | **Make or Model / Drug** | |
| FIREARMS | 30 ROUND MAGAZINES | |
| **Serial No.** | **Qty/Measure** | **Value** |
| NONE | | $ 100.00 |
| **Description** | | |
| -item#7-4 grey metal [illegible] .223/5.56 30 round capacity magazines-empty | | |

| Rl. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| Property Type | Make or Model / Drug | |
| FIREARMS | 30 ROUND MAGAZINES | |
| Serial No. | Qty/Measure | Value |
| NONE | | $ [illegible] |
| Description | | |
| -item#8-1 grey metal Colt .223/5.56 30 round capacity magazine-unknown number of rounds | | |

| Rl. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| Property Type | Make or Model / Drug | |
| FIREARMS | SOFT BODY ARMOR | |
| Serial No. | Qty/Measure | Value |
| NONE | | $ 300.00 |
| Description | | |
| -item#9-camouflage soft body armor with additional black body armor | | |

| Rl. Name | Property Status | |
|---|---|---|
| BROTHERS, CLAYTON T | RECOVERED | |
| Property Type | Make or Model / Drug | |
| FIREARMS | NUMEROUS ROUNDS | |
| Serial No. | Qty/Measure | Value |
| NONE | | $ 800.00 |
| Description | | |
| item#11 - black nylon bag containing multiple rounds of [illegible] ammunition | | |

Total Property Value : [illegible]

03/06/2014 12:24 ogdensburg police department [illegible] P.003/004

or upon a school bus as defined in section one hundred forty-two of the vehicle and traffic law, without the written authorization of such educational institution; or

(4) He possesses a rifle or shotgun and has been convicted of a felony or serious offense; or

(5) He possesses any dangerous or deadly weapon and is not a citizen of the United States; or

(6) He is a person who has been certified not suitable to possess a rifle or shotgun, as defined in subdivision sixteen of section 265.00, and refuses to yield possession of such rifle or shotgun upon the demand of a police officer. Whenever a person is certified not suitable to possess a rifle or shotgun, a member of the police department to which such certification is made, or of the state police, shall forthwith seize any rifle or shotgun possessed by such person. A rifle or shotgun seized as herein provided shall not be destroyed, but shall be delivered to the headquarters of such police department, or state police, and there retained until the aforesaid certificate has been rescinded by the director or physician in charge, or other disposition of such rifle or shotgun has been ordered or authorized by a court of competent jurisdiction.

(7) He knowingly possesses a bullet containing an explosive substance designed to detonate upon impact.

(8) He possesses any armor piercing ammunition with intent to use the same unlawfully against another.

Criminal possession of a weapon in the fourth degree is a class A misdemeanor.

§ 265.02 Criminal possession of a weapon in the third degree.

A person is guilty of criminal possession of a weapon in the third degree when:

(1) Such person commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime; or

(2) Such person possesses any explosive or incendiary bomb, bombshell, firearm silencer, machine-gun or any other firearm or weapon simulating a machine-gun and which is adaptable for such use; or

(3) Such person knowingly possesses a machine-gun, firearm, rifle or shotgun which has been defaced for the purpose of concealment or prevention of the detection of a crime or misrepresenting the identity of such machine-gun, firearm, rifle or shotgun; or

(4) Repealed, [illegible]

(5) (i) Such person possesses three or more firearms; or (ii) such person possesses a firearm and has been previously convicted of a felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person's home or place of business; or

(6) Such person knowingly possesses any disguised gun; or

(7) Such person possesses an assault weapon; or

(8) Such person possesses a large capacity ammunition feeding device.

Criminal possession of a weapon in the third degree is a class D felony.

[illegible]

SUPPORTING DEPOSITION (CPL § 100.20)

THE PEOPLE OF THE STATE OF NEW YORK
VS

CLAYTON T. BROTHERS

DEFENDANT(S)

| LOCATION OF INCIDENT | LOCATION OF DEPOSITION |
|---|---|
| STATE OF NEW YORK, LOCAL CRIMINAL COURT | STATE OF NEW YORK |
| COUNTY OF ST. LAWRENCE | COUNTY OF ST. LAWRENCE |
| TOWN OF RUSSELL | VILLAGE OF CANTON |

On DATE 04/23/14 at TIME STARTED 4:34 ☐ AM ☒ PM I, FULL NAME LAURYN KAITLYN HICKS [redacted]

STATE THE FOLLOWING:

I AM CURRENTLY AT THE STATE POLICE STATION IN CANTON SPEAKING WITH INVESTIGATOR CHRISTOPHER NYE REGARDING MY DAD, CLATON BROTHERS. I AM 15 YEARS OLD AND A 9TH GRADER AT EDWARDS-KNOX CENTRAL HIGH SCHOOL. CLAYTON IS NOT MY BIOLOGICAL FATHER. HE MARRIED MY MOTHER, JAIME (HICKS) BROTHERS, WHEN I WAS ABOUT 4 YEARS OLD. I WAS BORN IN GALVANSTON, TX AND RAISED IN CLEAR LAKE TEXAS. WHEN I WAS ABOUT 5 YEARS OLD, MY MOTHER AND CLAYTON BOUGHT A 2 STORY HOUSE LOCATED AT 1311 TEAL GLEN COURT IN CLEAR LAKE, TX. WE LIVED THERE WITH MY BROTHER, GEORGE HICKS, AND MY SISTER, ROBYN HICKS. I REMEMBER SHORTLY AFTER MOVING INTO THE HOUSE ONE NIGHT I HAD A BAD DREAM, SO I WENT INTO MY MOTHER AND CLAYTON'S BEDROOM AND GOT INTO BED WITH THEM. I WAS IN BETWEEN THEM IN THE BED. ONCE I GOT INTO THEIR BED, I FELL ASLEEP FOR AWHILE. AFTER AWHILE, I WAS WOKEN UP BY CLAYTON HAVING HIS HAND DOWN MY PANTS, UNDERNEATH MY UNDERWEAR. I WAS CONFUSED SO I GOT OUT OF THEIR BED.

ABOUT A FEW DAYS AFTER THIS HAPPENED, CLAYTON CAME INTO MY ROOM ONE MORNING BEFORE DAWN. I WAS SLEEPING AND I WOKE UP TO HIM HAVING HIS HANDS TOUCHING MY VAGINA UNDERNEATH MY UNDERWEAR. HE NEVER SAID ANYTHING TO ME. I DIDN'T KNOW WHAT WAS GOING ON AND WAS FREAKING OUT. HE EVENTUALLY STOPPED AN LEFT. CLAYTON KEPT COMING INTO MY ROOM EARLY IN THE MORNING, BEFORE EVERYBODY WAS UP, AND TOUCHING MY PRIVATE SPOT UNDER MY UNDERWEAR. THIS CONTINUED ON A WEEKLY BASIS FOR ABOUT A COUPLE YEARS. SOMETIMES IT WOULD OCCUR ONCE A WEEK AND SOMETIMES IT WOULD OCCUR MORE OFTEN. HE WOULD ALSO TOUCH MY PRIVATE SPOT IF I HAD A BAD DREAM AND GOT INTO BED WITH HIM AND MY MOTHER.

AFTER A COUPLE YEARS OF THIS, CLAYTON STARTED TO TAKE MY HAND AND MAKE ME TOUCH HIM IN HIS PRIVATE AREA. BY PRIVATE AREA, I MEAN HIS PENIS. LH

NOTICE
(Penal Law Sec. 210.45)
In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor. LH

Affirmed under penalty of perjury
this 23 day of APRIL, 20 14
- or -
*Subscribed and Sworn to before me
this ______ day of ____________, 20 ___

Lauryn Hicks
SIGNATURE (DEPONENT) – LAURYN KAITLYN HICKS, 03/18/00
Robyn Hicks
WITNESS
Christopher Nye
TIME ENDED 5:55 ☐ AM ☒ PM

*This form need to sworn to before an officer authorized to administer the oath.

04/24/2014 13:49 operator's police department P.001/008

THE PEOPLE OF THE STATE OF NEW YORK VS. CLAYTON T. BROTHERS
DEFENDANT(S)

HE WOULD JUST TAKE MY HAND AND SAY IT WOULD BE OK. HE WOULD JUST TAKE MY HAND AND MOVE IT AROUND ON HIS PENIS. THIS STARTED IN THE MORNING WHEN HE WOULD COME INTO MY ROOM. AFTER AWHILE HE WOULD ASK ME TO GO TO THE BATHROOM WITH HIM. ONCE IN THE BATHROOM, HE WOULD TAKE MY HAND AND HAVE ME TOUCH HIS PENIS. SOMETIMES THIS WOULD LAST FOR OVER AN HOUR. AROUND THE TIME THIS WAS GOING ON, CLAYTON WOULD TELL ME THAT I WOULD HAVE TO BE QUIET AND NOT TELL ANYBODY ABOUT WHAT WAS GOING ON OR ELSE I WOULD RUIN THE FAMILY.

CLAYTON HAD MADE A ROOM IN THE GARAGE FOR HIS WORK. SOMETIMES HE WOULD WAKE ME UP AND PULL ME OUT OF BED AND TAKE ME TO THE ROOM IN THE GARAGE. ONCE IN THE ROOM, HE WOULD TOUCH MY VAGINA AND HE WOULD HAVE ME TOUCH HIS PENIS. I DON'T THINK I COULD COUNT THE NUMBER OF TIMES CLAYTON TOUCHED MY PRIVATE PART OR HAD ME TOUCH HIS PENIS.

WHEN I WAS AROUND 8 YEARS OLD, MY COUSIN, TERESA ALBARES, WAS LIVING WITH US AND STAYING IN MY BEDROOM WITH ME. MY BEDROOM WAS ON THE SECOND FLOOR. TERESA WOULD HAVE BEEN AROUND 10 YEARS OLD AT THE TIME. WE HAD BUNK BEDS AND I WOULD SLEEP ON THE TOP BUNK AND SHE WOULD SLEEP ON THE BOTTOM BUNK. ONE NIGHT AROUND 2 OR 3 AM, CLAYTON CAME INTO OUR ROOM WHEN THE LIGHTS WERE OFF AND WE WERE SLEEPING. WHEN CLAYTON GOT INTO THE ROOM, HE WOKE TERESA UP AND THEY WOKE ME UP. ALL THREE OF US WERE SITTING ON THE FLOOR IN THE MIDDLE OF THE ROOM. CLAYTON TOLD TERESA TO GET ON HER HANDS AND KNEES. WHILE TERESA WAS DOING THIS, CLAYTON HAD HER TAKE OFF ALL OF HER CLOTHES. CLAYTON ONLY HAD A TANK TOP ON. CLAYTON STARTED TO EXPLAIN WHAT HE WAS ABOUT TO DO. CLAYTON STARTED TO HAVE SEX WITH TERESA. BY SEX, I MEAN HE PUT HIS PENIS IN HER VAGINA. THE LIGHTS WERE OFF, BUT I COULD STILL SEE THEM. THEY WERE SIDEWAYS TO ME AND I WAS A FEW FEET AWAY. CLAYTON STOPPED IN THE MIDDLE OF IT AND TRIED TO CONVINCE ME TO DO THE SAME THING. I STARTED CRYING AND TOLD HIM I DIDN'T WANT TO. HE TOLD ME NOT TO BE SCARED AND EVERYHTING WOULD BE OK. I WOULDN'T LET HIM TOUCH ME. I WENT BACK TO BED AND TERESA AND CLAYTON LEFT THE ROOM. I WOKE UP THE NEXT MORNING AND TERESA AND CLAYTON WERE SITTING ON THE COUCH IN THE SECOND LIVING ROOM BY THE DINING ROOM, UNDER A BLANKET. CLAYTON TOLD ME IT THAT TERESA GAVE HIM A BLOWJOB. HE TOLD ME IT WOULD BE OK AND TRIED TO CONVINCE ME TO GIVE HIM ONE TO. HE SAID HE WOULD PUT SYRUP ON HIS PENIS. I REFUSED TO DO THAT. THIS IS THE ONLY THING I REMEMBER WITH TERESA.

I REMEMBER WHEN I WAS IN 4TH GRADE, MY MOM, MY BROTHER, AND MY SISTER WENT TO WALMART. WHILE THEY WERE GONE, I WENT TO TALK TO CLAYTON BEFORE HE WAS GETTING IN THE SHOWER. CLAYTON TOLD ME TO COME INTO THE BEDROOM. WE SAT DOWN ON THE BED TO TALK. HE KEPT CHANGING THE SUBJECT AND NOT LETTING ME TALK. HE KEPT INTERRUPTING ME. HE TOLD ME TO TAKE MY SHORTS OFF. I STARTED TO TAKE THEM OFF BUT HESITATED. SO HE GOT AGGRESSIVE AND PULLED MY SHORTS DOWN. HE TOLD ME TO GET ON MY HANDS AND KNEES ON THE BED. I STILL HAD MY TOP ON. HE TOOK HIS ROBE OFF. HE WAS TRYING TO PUT HIS PENIS IN MY VAGINA. THE DOOR TO THE HOUSE OPENED AND MY FAMILY WAS BRINGING GROCERIES INTO THE HOUSE. CLAYTON THREW MY SHORTS AT ME AND TOLD ME TO HIDE IN THE CLOSET IN THE BATHROOM. MY MOM WAS LOOKING FOR ME AND CALLED MY NAME. THIS WENT ON FOR ABOUT 30 MINUTES. I WAS CRYING BECAUSE I DIDN'T WANT TO GET INTO TROUBLE. THAT IS WHY I WAITED SO LONG. WHEN I FINALLYCAME OUT OF THE BEDROOM, MY MOM GOT MAD AT ME AND WAS ASKING ME WHY I WAS IN HER ROOM. I WAS IGNORING HER. SHE WAS TALKING TO CLAYTON AND ASKED ME IF THERE WAS ANYTHING I NEEDED TO TELL HER ABOUT HIM AND I TOLD HER NO. LH

NOTICE
(Penal Law Sec. 210.45)
In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor. LH

Affirmed under penalty of perjury
This 23 day of APRIL, 20 14
- or -
*Subscribed and Sworn to before me
this ______ day of ____________, 20 ___

Lauryn Hicks
SIGNATURE OF DEPONENT - LAURYN KAITLYN HICKS, 03/10/99
Robyn Hicks
WITNESS
Time taken 2:50 ☐ AM ☒ PM
NAME OF PERSON TAKING DEPOSITION

*This form must be sworn to only when specifically required by law.

THE PEOPLE OF THE STATE OF NEW YORK VS. CLAYTON T. BROTHERS
DEFENDANT(S)

I JUST GOT IN TROUBLE FOR HIDING.

NOTHING HAPPENED FOR ABOUT ANOTHER YEAR OR TWO BECAUSE WE HAD GOT EVICTED FROM OUR HOUSE AND I WAS LIVING WITH MY GRANDMOTHER ON JADE MEADOW ROAD, IN CLEAR LAKE, TX AND CLAYTON WAS LIVING IN BAYTOWN, TX. THIS WAS MY MOM'S MOTHER. MY SISTER, BROTHER, AND MOTHER STAYED WITH ME. WE STAYED UNTIL I FINISHED 5TH GRADE. WE THEN MOVED INTO A RENTAL HOUSE AND CLAYTON CAME BACK AND JOINED US. THIS WAS IN CLEAR LAKE. WE STAYED IN THIS HOUSE FOR ALMOST A YEAR. WE THEN MOVED TO A DIFFERENT RENTAL HOUSE IN THE NEIGHBORHOOD OF MIDDLEBROOK IN CLEAR LAKE. WHILE LIVING HERE, ONE MORNING AFTER I GOT OUT OF THE SHOWER, I WAS LOOKING IN THE MIRROR IN MY ROOM. I ONLY HAD A TOWEL ON. I SAW SOMETHING SHINY OR RELFECTING OUT OF THE CORNER OF MY EYE. I WENT TO LOOK AT WHAT IT WAS AND SAW A CAMERA. I PULLED THE TOWEL UP AND AN IPOD FELL OUT. I CLICKED THE END VIDEO TO SEE HOW LONG IT HAD BEEN RECORDING AND TO WATCH THE VIDEO. IT HAD ONLY BEEN RECORDING FOR A COUPLE MINUTES. I HID THE IPOD UNDER MY MATTRESS AND WENT TO SCHOOL. WHEN I GOT HOME, MY ROOM WAS DIFFERENT. I TOLD MY SISTER WHAT HAD HAPPENED AND THEN GOT IN TROUBLE BECAUSE CLAYTON HAD FOUND A NOTE IN MY ROOM FROM MY FRIEND WHICH WAS NOT APPROPRIATE.

CLAYTON HAD A FRIEND IN NEW YORK WHOSE WIFE'S MOTHER COULDN'T TAKE CARE OF HERSELF ANYMORE AND WANTED TO SELL HER PROPERTY. THE PROPERTY IS LOCATED AT 881 BLANCHARD HILL ROAD IN RUSSELL, NEW YORK. CLAYTON BOUGHT THE PROPERTY. AROUND OCTOBER OF 2012, ME, MY SISTER, MY MOTHER, AND CLAYTON MOVED INTO THE HOUSE. AROUND CHRISTMAS OF 2012, I WENT BACK TO TEXAS WITH CLAYTON AND AROUND THE SAME TIME, MY SISTER WENT BACK TO TEXAS. MY MOM GOT STRESSED OUT ABOUT LIVING UP HERE AND ABOUT MONEY AND RAISING TEENAGERS ON HER OWN. AROUND MARCH OF 2013, WE ALL MOVED BACK TO TEXAS. I WAS GOING TO FAIL THE 8TH GRADE, SO IN ORDER TO PASS ONTO HIGH SCHOOL I NEEDED TO BE BACK IN NEW YORK STATE. IN JUNE OF 2013, JUST ME AND MY MOTHER MOVED BACK TO RUSSELL, NEW YORK. CLAYTON MOVED BACK UP HERE IN THE FALL OF 2013 AND MY SISTER AND HER BOYFRIEND, JOHN PARKER, JUST MOVED BACK UP HERE A COUPLE MONTHS AGO.

A COUPLE MONTHS AGO BEFORE MY SITER MOVED BACK UP HERE, I WAS SITTING ON THE COUCH AND TRYING TO DO HOMEWORK, AND I NEEDED HELP WITH IT. CLAYTON WAS SUPPOSED TO BE HELPING ME. HE WAS SITTING ON THE COUCH NEXT TO ME AND STARTED MOVING CLOSER AND MAKING COMMENTS ABOUT MY BODY. I TOLD HIM TO STOP AND IGNORED HIM. HE TRIED TO TOUCH ME BUT I KEPT SWATTING HIS HANDS AWAY. HE CROWED ME TO THE END OF THE COUCH. HE THEN GRABBED MY BOOBS AND MY VAGINA OVER TOP OF MY CLOTHES. I GOT MAD AND YELLED AT HIM AND WENT INTO MY ROOM AND LOCKED IT. THAT WAS THE LAST TIME CLAYTON EVER TOUCHED ME.

TWO NIGHTS AGO, CLAYTON CAME INTO MY ROOM AND CONFRONTED ME ABOUT WHAT I WAS TELLING MY SISTER'S BOYFRIEND, JOHN PARKER. CLAYTON TOLD ME HE HAD BEEN RECORDING MINE AND JOHN'S CONVERSATION. EARLIER THAT DAY I HAD TOLD JOHN WHAT CLAYTON HAD BEEN DOING TO ME. I TRUSTED JOHN BECAUSE HE UNDERSTOOD. I WAS CRYING AND ASKED CLAYTON NOT TO GET MAD OR DO ANYTHING TO ME. HE JUST LEFT MY ROOM. WHEN I GOT HOME FROM SCHOOL YESTERDAY, I TOLD JOHN HE HAD BEEN RECORDING OUR CONVERSATIONS AND NEEDED TO DO SOMETHING. I TOLD JOHN I DIDN'T FEEL SAFE AND WAS GOING TO LEAVE. I TOLD HIM I WANTED TO STAY WITH MY FIRNED, PAIGE, AND NOT TO TELL ANYONE WHERE I WAS GOING. LH

**NOTICE**
(Penal Law Sec. 210.45)
In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor. LH

Affirmed under penalty of perjury
this 23 day of APRIL, 20 14
- or -
*Subscribed and Sworn to before me
this ______ day of ____________, 20 ____

[signature] Lauryn Hicks
(SIGNATURE OF DEPONENT) - LAURYN KAITLYN HICKS 03/1998
[signature]
WITNESS
[signature]
TIME ENDED 8:59 ☐ AM ☒ PM

[illegible]

**SUPPORTING DEPOSITION (CPL § 100.20)**

New York State Police

Page 4 of 4

THE PEOPLE OF THE STATE OF NEW YORK vs CLAYTON T. [illegible]

JOHN CALLED MY MOM AND TOLD HER TO MEET HIM AT THE [illegible] SO THEY COULD TALK. I WALKED TO PAIGE'S HOUSE AND TOLD HER I NEEDED TO STAY THERE. AFTER A FEW HOURS, MY MOM PICKED [illegible] UP. WE THEN WENT HOME. WE SAT IN THE CAR WHILE MY MOM TALKED TO CLAYTON. CLAYTON CAME OUT TO APOLOGIZE AND ACCEPT HIS APOLOGY. CLAYTON IS LOOKING AT ME AND SAID, "I'M SORRY, I LOVE YOU. WE'VE BEEN KEEPING OUR SECRET FOR A LONG TIME." MY PARENTS ASKED ME WHAT I WANTED TO DO AND AT FIRST I SAID I DIDN'T KNOW AND THEN I LOOKED CLAYTON IN THE FACE AND SAID THAT I WANTED HIM TO LEAVE. I WAS CONFUSED ABOUT WHAT WAS GOING ON AND CLAYTON WAS LEFT.

PAIGE TOLD ME TODAY THAT SHE AND HER MOTHER THOUGHT I SHOULD TALK WITH THE SCHOOL COUNSELOR. PAIGE'S MOTHER HAD TALKED WITH THE COUNSELOR AND [illegible] SCHOOL TODAY THEY PAGED ME TO COME DOWN AND SPEAK WITH A COUNSELOR.

**NOTICE**
(Penal Law Sec. 210.45)

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury this 21 day of APRIL, 20 14

Subscribed and Sworn to before me this ____ day of ____, 20 ____

[illegible]

[illegible] [illegible] [illegible]

SUPPORTING DEPOSITION (CPL § 100.20)

New York State Police
Page 1 of 2

THE PEOPLE OF THE STATE OF NEW YORK
VS

CLAYTON T. BROTHERS

| LOCATION OF INCIDENT | LOCATION OF DEPOSITION |
|---|---|
| STATE OF NEW YORK, LOCAL CRIMINAL COURT | STATE OF NEW YORK |
| COUNTY OF ST. LAWRENCE | COUNTY OF ST. LAWRENCE |
| TOWN OF RUSSELL | VILLAGE OF CANTON |

On (DATE) 04/23/14 at (TIME STARTED) 7:12 ☐ AM ☐ PM I, (FULL NAME) ROBYN A. HICKS,

STATE THE FOLLOWING:

I AM CURRENTLY AT SP CANTON SPEAKING WITH INVESTIGATOR CHRISTOPHER NYE REGARDING MY DAD, CLAYTON BROTHERES. HE IS MY STEP-DAD, BUT I ALWAYS LOOKED AT HIM AS MY REAL DAD. I WAS AROUND 7 OR 8 YEARS OLD WHEN HE MARRIED MY MOTHER. WE LIVED IN CLEAR LAKE, TEXAS AT THE TIME.

I REMEMBER WHEN I WAS AROUND 8 YEARS OLD, GOING INTO MY PARENT'S BEDROOM AND GETTING INTO BED WITH THEM. WE WERE LIVING AT 1811 TEAL GLEN COURT, CLEAR LAKE, TX. WHEN I GOT INTO THEIR BED, I FELL ASLEEP. I WOKE UP TO MY DAD TOUCHING ME. HE WAS TOUCHING MY VAGINA, OVER MY CLOTHES. I SHOOK IT OFF AND LEFT AND JUST THOUGHT HE WAS SEARCHING FOR MY MOM. I NEVER TOLD ANYBODY ABOUT THIS UNTIL NOW, BECAUSE I DIDN'T KNOW WHAT TO THINK. THIS WAS THE ONLY TIME MY DAD TOUCHED ME IN A SEXUAL WAY.

WHEN I WAS AROUND 15 OR 16 YEARS OLD AND LIVING IN THE MIDDLEBROOK NEIGHBORHOOD OF CLEAR LAKE, TX, MY SISTER, LAURYN HICKS, RAN INTO MY ROOM AFTER SCHOOL AND TOLD ME THAT THAT MORNING SHE HAD FOUND MY DAD'S IPOD HIDING IN HER ROOM RECORDING HER CHANGING. I JUST SAID OK AND DIDN'T KNOW WHAT TO THINK ABOUT IT. LAURYN ALSO TOLD ME THAT IT WAS GONE AND HER ROOM WAS DESTROYED, LIKE IT HAD BEEN SEARCHED.

WHEN I WAS YOUNGER, I REMEMBER LAURYN COMING TO ME AND TELLING ME THAT DAD WAS DOING BAD THINGS TO HER AND OUR COUSIN, TERESA ALBARES, BUT SHE DID NOT TELL ME EXACTLY WHAT SHE MEANT BY BAD THINGS.

A COUPLE DAYS AGO, MY MOM, JAIME BROTHERS, PICKED ME UP FROM WORK AT KINNEY'S IN GOUVERNEUR. MY MOM SAID THAT MY BOYFRIEND, JOHN PARKER, WANTED TO MEET US AT THE KUNOCO

NOTICE
(Penal Law Sec. 210.45)
In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury this 23 day of APRIL, 20 14
- or -
*Subscribed and Sworn to before me this ____ day of ____, 20 ___

(SIGNATURE OF DEPONENT) – ROBYN A. HICKS, 11/01/94

WITNESS: (NAME OF PERSON TAKING DEPOSITION)

TIME ENDED 7:34 ☐ AM ☐ PM

THE PEOPLE OF THE STATE OF NEW YORK VS. CLAYTON T. BROTHERS

[illegible]

IN RUSSELL, WE MET HIM AT KINNEY, AND JOHN TOLD US THAT LAURYN HAD GONE TO HER FRIEND, PAIGE'S HOUSE. JOHN SAID THAT SHE WAS SCARED BECAUSE SHE THOUGHT MY FATHER WAS GOING TO HURT HER FOR TELLING JOHN WHAT HAD HAPPENED BETWEEN HER AND MY FATHER. JOHN SAID THAT LAURYN WAS BEING MOLESTED BY MY DAD. JOHN SAID THAT MY DAD HAD BEEN RECORDING THE CONVERSATION BETWEEN JOHN AND LAURYN AND HEARD LAURYN TELL JOHN ABOUT HER BEING MOLESTED. WE WENT TO PAIGE'S HOUSE TO PICK LAURYN UP AND WE WENT HOME. ONCE HOME, MY MOM GOT OUT OF THE CAR AND WENT TO TALK TO MY DAD IN THE HOUSE. ME, JOHN, AND LAURYN STAYED IN THE CAR. ABOUT 10 MINUTES LATER, MY DAD CAME OUT TO THE CAR AND TRIED TO APOLOGIZE TO MY SISTER AND MAKE IT SEEM LIKE SOMETHING THEY HAD TOGETHER BY SAYING THAT IT WAS A SECRET THEY HAD BEEN KEEPING FOR A LONG TIME. MY DAD THEN GOT OUT OF THE CAR AND LEFT ON HIS MOTORCYCLE. I HAVEN'T SEEN HIM SINCE.

R.H.

NOTICE

(Penal Law Sec. 210.45)

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

R.H.

Affirmed under penalty of perjury

this 23 day of APRIL, 20 14

- OR -

*Subscribed and Sworn to before me

this ______ day of ______________, 20 ___

[illegible]

Signature of Deponent - ROBYN A. HICKS, 11/21/04

Witness:

Time Started: 7:09 ☐ AM ☒ PM

Name of Person Taking Deposition

New York State Police
Page 1 of 2

SUPPORTING DEPOSITION (CPL § 100.20)

THE PEOPLE OF THE STATE OF NEW YORK
VS

CLAYTON T. BROTHERS

DEFENDANT(S)

| LOCATION OF INCIDENT: | LOCATION OF DEPOSITION: |
| --- | --- |
| STATE OF NEW YORK, LOCAL CRIMINAL COURT | STATE OF NEW YORK |
| COUNTY OF ST. LAWRENCE | COUNTY OF ST. LAWRENCE |
| TOWN OF RUSSELL | VILLAGE OF CANTON |

On 04/23/14 at 7:51 ☐ AM ☒ PM I, JAMIE J. BROTHERS, [redacted]

STATE THE FOLLOWING:

I AM CURRENTLY AT SP CANTON SPEAKING WITH INVESTIGATOR NYE REGARDING MY HUSBAND, CLAYTON BROTHERS. I MARRIED CLAYTON IN 2003 WHEN WE WERE LIVING OUTSIDE HOUSTON IN CLEAR LAKE, TEXAS. I HAVE THREE CHILDREN, ROBYN HICKS, AGE 19, GEORGE HICKS, AGE 17, AND LAURYN HICKS, AGE 15. ROBYN AND LAURYN LIVE UP HERE WITH ME IN RUSSELL AND GEORGE LIVES IN CLEAR LAKE, TX WITH MY MOM.

I REMEMBER WHEN WE WERE LIVING IN THE MIDDLEBROOK NEIGHBORHOOD OF CLEAR LAKE, TX LAURYN HAVING A LETTER ABOUT KISSING A BOY IN THE PARK. I DON'T REMEMBER HOW THE LETTER WAS FOUND. LAURYN GOT GROUNDED FOR THE LETTER

YESTERDAY, I PICKED ROBYN UP FROM WORK AND MET HER BOYFRIEND, JOHN PARKER, AT THE KUNOCO IN RUSSELL. I ASKED JOHN WHAT WAS GOING ON AND HE SAID THAT LAURYN HAD RUN AWAY. WE BEGAN LOOKING FOR LAURYN AND WHILE WE WERE DOING SO, JOHN TOLD ME LAURYN HAD TOLD HIM THAT CLAYTON HAD BEEN MOLESTING HER. I DIDN'T BELIEVE IT AT FIRST. I ENDED UP GOING BACK HOME TO SEE IF LAURYN HAD RETURNED. I CONFRONTED CLAYTON ABOUT WHAT JOHN HAD TOLD ME AND HE DENIED IT. I THEN ASKED HIM IF DID ANYTHING WITH MY NIECE, TERESA ALBARES, AND HE HANDED ME THE PHONE AND TOLD ME TO CALL HIS SISTER, GENEVIEVE, WHO IS TERESA'S MOTHER. I DON'T KNOW GENEVIEVE'S LAST NAME. I ASKED GENEVIEVE TO ASK TERESA IF ANYTHING SEXUALLY HAD HAPPENED BETWEEN HER AND CLAYTON. I COULD HEAR TERESA TELLING HER MOTHER THAT IT HAD HAPPENED A LONG TIME AGO AND WAS IN THE HANDS OF GOD. I TURNED TO CLAYTON AND TOLD HIM THIS IS REAL AND HE SAID HE WAS SORRY AND ASKED IF I COULD FORGIVE HIM. I THEN WENT TO LOOK FOR LAURYN AND THAT IS WHEN JOHN TOLD ME SHE WAS AT PAIGE'S HOUSE. WE WENT AND GOT HER AND BROUGHT HER HOME. I TOLD THE KIDS TO STAY IN THE CAR AND I WENT INSIDE AND CONFRONTED CLAYTON. [initials]

**NOTICE**
(Penal Law Sec. 210.45)
In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury
this 23 day of APRIL, 20 14
- or -
*Subscribed and Sworn to before me
this ____ day of ________, 20 ___

[signature]
(SIGNATURE OF DEPONENT) - JAMIE J. BROTHERS, 04/15/??

WITNESS: [signature]
Time Ended: 8:20 ☐ AM ☒ PM

* Person used to build is [illegible]

SUPPORTING DEPOSITION (CPL § 100.20) — New York State Police — Page 2 of 2

THE PEOPLE OF THE STATE OF NEW YORK VS. CLAYTON T. BROTHERS

I TOLD HIM HE HAD TO LEAVE AND GET OUT. HE BEGGED AND PLEADED WITH ME AND I STILL TOLD HIM HE NEEDED TO LEAVE. CLAYTON WENT OUT TO THE CAR AND GOT IN THE CAR AND TOLD LAURYN HE WAS SORRY. CLAYTON GOT OUT OF THE CAR AND WENT INTO THE HOUSE AND GOT HIS STUFF. HE THEN TOOK OFF WALKING AND SAID HE HAD NO PLACE TO GO. HOURS LATER, CLAYTON CAME BACK AND WAS SOAKING WET. I DIDN'T WANT HIM TO FREEZE TO DEATH SO I TOLD HIM HE COULD SLEEP ON THE FLOOR. IN THE MORNING HE WOKE UP AND I TOLD HIM TO LEAVE. HE GOT ON HIS WHITE HARLEY DAVIDSON, WITH TEXAS REGISTRATION, AND LEFT.

**NOTICE**
(Penal Law Sec. 210.45)
In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury this 25 day of APRIL, 20 14
- or -
Subscribed and Sworn to before Me this ____ day of ____, 20 ____

Signature of Deponent: JAMIE T BROTHERS
Witness — Time: 3:33 PM

04/24/2014 12:51 ogdensburg police department FAXSERVER P.002/008

# EXHIBIT "C"

New York State
# INCIDENT REPORT

| 1. Agency | 2. Div/Precinct | 3. ORI | 5. Case No. | 6. Incident No. |
|---|---|---|---|---|
| B2 TROOP B - ZONE 2 | B211 | NY1440100 | | |

| 7,8,9. Date Reported (Day, Date, Time) | 10,11,12. Occurred On/From (Day, Date, Time) | 13,14,15. Occurred To (Day, Date, Time) |
|---|---|---|
| WEDNESDAY 04/23/2014 11:30 | SUNDAY 02/23/2014 12:00 | SUNDAY 02/23/2014 12:00 |

| 16. Incident Type | 17. Business Name |
|---|---|
| SEX OFNS-SEX OFFENSES | |

19. Incident Address (Street Name, Bldg. No., Apt. No.)
861 BLANCHARD HILL ROAD

20. City/State/Zip
RUSSELL NEW YORK 13684

| 21. Location Code (TSLED) | 23. No. of Victims | 24. No. of Suspects | 26. Victim also Complainant? |
|---|---|---|---|
| RUSSELL TOWN 4579 | 1 | 1 | NO |

Location Type
SINGLE FAMILY HOME

Dispatcher Notes

| 22.OFF. No. | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS |
|---|---|---|---|---|---|---|---|---|---|
| 1. | PL | 130.55 | | B | M | 3 | C | SEXUAL ABUSE 3RD-SUBJECT ANOTHER TO SEX CONTACT W/O | 1 |
| 2. | PL | 260.10 | 01 | A | M | 0 | C | ACT IN MANNER INJUR CHILD LESS THAN 17 | 1 |

## ASSOCIATED PERSONS

| 25. TYPE | Name (Last, First, Middle, Title) | DOB | Street Name Bldg., Apt.No., City, State, Zip | Res Phone Bus Phone |
|---|---|---|---|---|
| CHILD PROTECTION SERVICES | HAYES, ERIN, E | | 6 JUDSON STREET CANTON NY 13617 | |
| PAROLE OFFICER | LAWRENCE, CHRIS | | NEW YORK STATE DIVISION OF PAROLE WATERTOWN NY 13601 | |
| PERSON INTERVIEWED | HICKS, R | | 861 BLANCHARD HILL ROAD RUSSELL NY 13684 | |
| PERSON INTERVIEWED | PARKER, JOHN, A | | 861 BLANCHARD HILL ROAD RUSSELL NY 13684 | |
| PERSON INTERVIEWED | BROTHERS, JAMIE | | 861 BLANCHARD HILL ROAD RUSSELL NY 13684 | |
| PERSON INTERVIEWED | MARTIN, JOSEPH, D | | 1325 COUNTY RT 17 RUSSELL NY 13684 | |
| PERSON INTERVIEWED | MARTIN, BRENDA, J | | 1325 CR 17 RUSSELL NY 13684 | |
| SCHOOL OFFICIAL | SYKES, AMY, L | | 214 TALCVILLE RD EDWARDS NY 13635 | |
| SUSPECT | BROTHERS, CLAYTON, T | | 861 BLANCHARD HILL ROAD RUSSELL NY 13684 | |
| VICTIM | HICKS, L | | 861 BLANCHARD HILL ROAD RUSSELL NY 13684 | |

## VICTIM

| Name | 27. DOB | 28. Age | 29. Gender | 30. Race | 31. Ethnicity | 32. Handicap | 33. Residence |
|---|---|---|---|---|---|---|---|
| HICKS, L | | 14 | FEMALE | WHITE | NOT APPLICABLE | | |

## SUSPECT

| Person ID # | 34. Type | 35. Name (Last, First, Middle) |
|---|---|---|
| | SUSPECT | BROTHERS, CLAYTON, T |

| 37. Apparent Condition | 38. Address (Street Name, Bldg., Apt. No., City, State, Zip) |
|---|---|
| | 861 BLANCHARD HILL ROAD RUSSELL NY 13684 |

| 39a. Home Phone | 39b. Work Phone | 40. Social Security | 41. DOB | 42. Age | 43. Gender | 44. Race |
|---|---|---|---|---|---|---|
| (315)302-4042 | | | | 37 | MALE | WHITE |

| 45. Ethnicity | 46. Skin | 47. Occupation |
|---|---|---|
| NOT APPLICABLE | | |

| 48. Height | 49. Weight | 50. Hair | 51. Eyes | 52. Glasses | 53. Build |
|---|---|---|---|---|---|
| 5ft. 10in. | 165lbs. | BLOND | BLUE | UNKNOWN | MEDIUM |

| 54. Employer/School | 55. Employer Address |
|---|---|
| | NY |

| 56. Scars/Marks/Tattoos /Description |
|---|
| |

36. Alias/Nickname/Maiden Name

| Last Name | First Name | MiddleName |
|---|---|---|
| | | |

## NARRATIVE

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/23/2014 | 04/23/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

BCI Case Adoption - Sexual Abuse 3rd/Endangering the Welfare of a Child - Investigator Christopher M. Nye assigned.

L[redacted] HICKS, age 15, reports being sexually abused by her step-father, CLAYTON BROTHERS.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/23/2014 | 04/23/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

CPS request assistance:

On 04/23/14, I was telephonically contacted by St. Lawrence County Child Protective Services Case Worker ERIN HAYES requesting interviewing a 15 year old female at Edwards-Knox Central School, Russell, New York , who told a school counselor she was being sexually abused by her step-father.

On 04/23/14, at approximately 1:30 p.m., I met HAYES at Edwards-Knox Central School, where we initially interviewed the 15 year old female, L[redacted] HICKS, in the presence of the High School Principal, AMY SYKES. L. HICKS stated that she had been being sexually abused by her step-father, CLAYTON BROTHERS, since she was around 4 years old.

On 04/23/14, I requested HAYES transport L. HICKS to SP Canton to be further interviewed.

On 04/23/14, I personally contacted L. HICKS' sister, ROBYN HICKS, at her residence, and advised her that L. HICKS would be at SP Canton being interviewed. I advised R. HICKS to have he mother, JAMIE BROTHERS, come to SP Canton as soon as she comes home.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/23/2014 | 04/23/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

L[redacted] HICKS interview:

On 04/23/14, I continued the interview and obtained a supporting deposition from L[redacted] HICKS at SP Canton, in the presence of CPS Caseworker, ERIN HAYES.

L. HICKS stated she is a 15 year old who is currently a 9th grader at Edwards-Knox Central School. L. HICKS stated CLAYTON BROTHERS is not her biological father and married her mother, JAMIE (HICKS) BROTHERS, when she was about 4 years old. L. HICKS stated she was born in Galvanston, Texas and was raised in Clear Lake, Texas. When L. HICKS was about 5 years old,

her mother and step-father bought a 2 story house located at 1311 Teal Glen Court in Clear Lake, Texas. L. HICKS stated she lived there with her mother and step-father, as well as her sister, ROBYN HICKS, and brother, GEORGE HICKS. L. HICKS stated she remembered one night, shortly after moving into the house, she had a bad dream and went into her parents bedroom to sleep with them. L. HICKS stated she was awaken by C. BROTHERS having his hands down her pants, underneath her underwear. L. HICK stated she was confused, so she got out of the bed.

L. HICKS went on to state a few days after this happened, C. BROTHERS came into her bedroom one morning and woke her up by having his hands touching her vagina underneath her underwear. L. HICKS stated this continued on a weekly basis for about a couple years and sometimes it would occur if she would get into bed with him and her mother.

L. HICKS stated a couple years later, C. BROTHERS started taking her hand and making her touch his penis. This started when he would come into her room in the morning, and later on he would have her go to the bathroom with him and have her do the same thing there. While this was happening, C. BROTHERS told L. HICKS she would have to be quiet and not tell anybody or else she would ruin the family. L. HICKS stated C. BROTHERS made a room in his garage and would sometimes wake her up and take her out there where he would touch her vagina and he would have her touch his penis.

L. HICKS stated when she was around 8 years old, her cousin, TERESA ALBARES, was living with her and they were sharing a bedroom. L. HICKS stated one night, C. BROTHERS came into their room while they were sleeping and woke both girls up. they were sitting in the middle of the room, when C. BROTHERS told ALBARES to get on her hands and knees and take her clothes off. L. HICKS stated C. BROTHERS started to have sex with ALBARES by inserting his penis into herr vagina. L. HICKS stated C. BROTHERS stopped in the middle of it and tried to convince her to do the same thing. L. HICKS started crying and told him she did not want to. L. HICKS stated she went back to bed and ALBARES and C. BROTHERS left the bedroom. The next morning, L. HICK woke up and went into the living room and saw ALBARES and C. BROTHERS sitting on the couch underneath a blanket. L. HICKS stated C. BROTHERS told her ALBARES gave her a blowjob and asked if she would too. L. HICKS refused to do so.

l. HICKS continued to state when she was in 4th grade, her family went to Walmart, except for her and C. BROTHERS. L. HICKS stated she went to talk with C. BROTHERS about something and he kept interrupting her and told her to take her shorts off. L. HICKS stated she started to take her shorts off, but hesitated, so C. BROTHERS got aggressive and pulled her shorts down. C. BROTHERS told L. HICKS to get on her hand and knees on the bed. L. HICKS stated C. BROTHERS tried to put his penis inside her vagina, when the main house door opened and her family came in. L. HICKS stated C. BROTHERS threw her her shorts and told her to hide, which she did. Eventually she came out of the bedroom from hiding and got into trouble with her mother for not being able to find her.

L. HICKS stated nothing happened for another year or two between her and C. BROTHERS. L. HICKS stated her family was evicted from their house and they moved around a little bit before settling down in an rental house in the Middlebrook neighborhood or Clear Lake, Texas. L. HCIKS stated one morning while staying in this house, she was looking in the mirror in her room, after getting out of the shower. She stated she only had a towel on. Out of the corner of her eye, she saw something reflective. When L. HICKS went to see what it was, she discovered it was an ipod recording her. L. HICKS stated she hid it under her mattress and went to school. When she got home, her room was a mess and ipod was gone. L. HICKS stated she told her sister, ROBYN HICKS, what had happened and got into trouble because C. BROTHERS found and note in her bedroom which was inappropriate.

L. HICKS stated around October 2012, C. BROTHERS bought property at 861 Blanchard Hill Road, in the Town of Russell, and her, J. BROTHERS, C. BROTHERS, and R. HICKS moved there. They stayed there until around March 2013, when they moved back to Texas, however, around June 2013, they L. HICKS and her mother moved back to Russell, New York because of L. HICKS' school grade. L. HICKS stated C. BROTHERS moved back to Russell, New York in the fall of 2013, and her sister and sister's boyfriend, JOHN PARKER, moved back to Russell, New York a couple months ago.

L. HICKS stated a couple months ago, before her sister moved back up here, she was sitting on the couch and asked C. BROTHERS for help with her homework. L. HICKS stated C. BROTHERS sat down on the couch and started moving closer to her and making comments about her body. L. HICKS stated C. BROTHERS tried to touch her but she kept swatting his hand away Eventually he crowded her to the end of the couch and grabbed her boobs and vagina, over the top of her clothes. L. HICKS stated she got mad, yelled at him, and got up and left. L. HICKS stated this was the last time C. BROTHERS ever touched her.

L. HICKS stated two nights ago, C. BROTHERS came into her room and confronted her about she was telling PARKER. C. BROTHERS told L. HICKS he had been recording her conversations and knows she told PARKER about what C. BROTHERS had been doing to her. L. HICKS stated she started crying and C. BROTHERS left the room. L. HICKS stated when she got home from school on 04/22/14, she told PARKER about what C. BROTHERS told her and said she was going to her friend's house. A

few hours later, J. BROTHERS showed up at her friend's house and took her back home. L. HICKS stated she stayed in the car and C. BROTHERS came out of the house and stated, "I'm sorry. I love you. We've been keeping out secret for a long time." L. HICKS stated she was confused with what was going on and wanted C. BROTHERS to leave, which he did.

A copy of the supporting deposition is attached to this report as enclosure #1.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/23/2014 | 04/23/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

ROBYN HICKS interview:

On 04/23/14, ROBYN HICKS came to SP Canton with her mother, JAMIE HICKS. I personally interviewed and obtained a supporting deposition from R. HICKS.

R. HICKS stated her step-dad is CLAYTON BROTHERS, but she has always called him dad. R. HICKS stated she was around 7 or 8 years old when her mother married C. BROTHERS.

R. HICKS stated she remembered when she was around 8 years old, going into her parent's bedroom and getting into bed with them. R. HICKS stated they were living at 1311 Teal Glen Court, Clear Lake, Texas. R. HICKS stated she fell asleep when she got into their bad and was woken up to C. BROTHERS touching her vagina, over her clothes. R. HICKS stated she shook it off and left and just thought it was him looking for her mother. R. HICKS stated she never told anybody about this because she didn't know what to think. R. HICKS stated this was the only time he ever touched her in a sexual way.

R. HICKS stated when she was around 15 or 16 years old and living in the Middlebrook neighborhood of Clear Lake, Texas, her sister, L[redacted] HICKS, ran into her room after school one day and told her that she found her dad's ipod hiding in her room recording her. R. HICKS stated she just said OK and didn't know what to think about it. R. HICKS stated the ipod was gone and her was destroyed, like it had been searched.

R. HICKS stated when she was younger, she remembered L. HICKS coming to her and telling her that C. BROTHERS was doing bad things to her and their cousin, TERESA ALBARES, but did not tell her exactly what she meant by bad things.

R. HICKS stated a couple days ago, J. BROTHERS, picked her up from work and said that her boyfriend, JOHN PARKER, wanted to meet at Kunoco in Russell. When they met at Kunoco, PARKER told them L. HICKS went to a friend's house because she was scared of C. BROTHERS. PARKER told them L. HICKS disclosed to him that she had been molested by C. BROTHERS. R. HICKS stated they located L. HICKS and brought her home, where C. BROTHERS came out to the car and apologized to L. HICKS.

A copy of the supporting deposition is attached to this report as enclosure #2.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/23/2014 | 04/23/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

JAMIE BROTHERS interview:

On 04/23/14, I personally interviewed and obtained a supporting deposition from JAMIE BROTHERS, mother of L[redacted] HICKS, at SP Canton.

J. BROTHERS stated she married CLAYTON BROTHERS in 2003 and were living outside of Houston, in Clear Lake, Texas. J. BROTHERS stated she has three children: ROBYN HICKS, age 19; GEORGE HICKS, age 17; and L[redacted] HICKS, age 15. J. BROTHERS stated R. HICKS and L. HICKS live in Russell, New York with her and G. HICKS lives in Clear Lake, Texas with his grandmother.

J. BROTHERS stated she remembers when they were living in the Middlebrook neighborhood of Clear Lake, Texas, L. HICKS having a letter about kissing a boy in the park. J. BROTHERS does not remember how the letter was found, but remembers L. HICKS being grounded for it.

J. BROTHERS stated yesterday she picked up R. HICKS from work and met R. HICKS' boyfriend, JOHN PARKER, at the Kunoco in Russell. PARKER advised them that L. HICKS had run away and C. BROTHERS had been molesting her. J. BROTHERS stated she went home and confronted C. BROTHERS about the allegations, which he initially denied. J. BROTHERS then asked C. BROTHERS about TERESA ALBARES and C. BROTHERS handed her the phone and told her to call ALBARES' mother, GENEVIEVE. ALBARES stated that something sexually did happen between her and C. BROTHERS, but it was a long

time ago and was in the hands of God. J. BROTHERS then turned to C. BROTHERS and he said he was sorry and asked if she would forgive him. J. BROTHERS then went to L. HICKS' friend's house and picked her up. When they got back home, J. BROTHERS told the kids to stay in the car. J. BROTHERS went in the house and told C. BROTHERS he had to leave. J. BROTHERS stated C. BROTHERS pleaded with her, but she still told him he had to leave. J. BROTHERS stated C. BROTHERS went out and got in the car and then went back into the house and got his stuff. C. BROTHERS then left on foot and came back to the house several hours later. J. BROTHERS told C. BROTHERS he could sleep on the floor and when he woke up in the morning she told him to leave. J. BROTHERS stated he got on his white Harley Davidson, with Texas registration, and left.

A copy of the supporting deposition is attached to this report as enclosure #3.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/24/2014 | 04/24/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Parole:

On 04/24/14, I was advised by JAMIE BROTHERS that CLAYTON BROTHERS was on parole in New York State for a crime committed in Pennsylvania. J. BROTHERS stated C. BROTHERS' Parole Officer is CHRIS LAWRENCE. J. BROTHERS also stated her and C. BROTHERS Wells Fargo Card was used this morning around 10:30 a.m. at the Salvation Army in Watertown, New York.

On 04/24/14, I advised LAWRENCE of my investigation and he stated C. BROTHERS is a level 4 offender. LAWRENCE stated he could violate him based on the fact he had police contact on 04/10/14 for a V&T ticket and did not report it to him and based on the supporting depositions in this case.

On 04/24/14, Trooper Connor Sutton notified the State Police interstate patrols in Troop D and Troop C to be on the look out for a white Harley Davison with Texas registation, being operated by C. BROTHERS. C. BROTHERS may be enroute to Clifton Forge, Virginia, where his grandparents live. C. BROTHERS failed to surrender his Texas driver's license for a New York State license, and according to J. BROTHERS, the motorcycle is not insured.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/28/2014 | 04/28/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Follow-up:

On 04/28/14, I telephonically contacted JAMIE BROTHERS, who stated she has not heard from CLAYTON BROTHERS. J. BROTHERS stated C. BROTHERS has not used the debit card since last report.

On 04/28/14, I was telephonically contacted by Parol Officer CHRIS LAWRENCE who stated he notified the police in Clifton Forge, Virginia to check C. BROTHERS' grandparents' residence at 4 Ingalls Circle, Clifton Forge, Virginia. The police stated they checked the residence and the Harley Davidson C. BROTHERS was operating was not there.

On 04/28/14, I was personally advised by CPS Case Worker ERIN HAYES who stated she verified the crimes which occurred in Texas occurred in the Clear Lake Division of the Houton Police Department. HAYES stated she contacted their sex offense unit and left a message for Sergeant White to re-contact her. HAYES stated she would have Sergeant White contact me for copies of supporting depositions. HAYES also provided me with a copy of her Investigation Conclusion Narrative, which stated the case was INDICATED and CLOSED by CPS. A copy of the narrative is attached to this report as enclosure #4.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/29/2014 | 04/29/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Weapons:

On 04/29/14, I was contacted by Parole Office CHRIS LAWRENCE, who advised me JOHN PARKER, located several weapons, including assault weapons at the residence of CLAYTON BROTHERS, at 861 Blanchard Hill Road, in the Town of Russell. This case was adopted by Troop B GIU Investigator James DiSalvo. (Refer to SJS#5633862).

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 04/29/2014 | 04/29/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

CPS Hotlined Texas:

On 04/29/14, I was telephonically contacted by CPS Caseworker ERIN HAYES who advised me she made a hotline referral today

to the State of Texas regarding this case. HAYES stated she has not heard back from Sergeant White of the Clear Lake Police Department.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/01/2014 | 05/01/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Sergeant White notified.:

On 05/01/14, I was telehphonically contatced by CPS Case Worker ERIN HAYES, who advised me she made contact with Sergeant Lauren White of the Houston Police Department. HAYES stated she was emailing her report to Sergeant White. I advised HAYES I would also email a draft copy of my SJS, along with supporting depositions I obtained to Sergeant White..

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/13/2014 | 05/13/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Parole Absconder:

On 05/13/14, I telephonically contacted Parole Officer CHRIS LAWRENCE who advised NYS Parole was not obtaining a warrant for CLAYTON BROTHERS, but the violation was turned over to Pensylvania Parole to obtain a warrant, since that was where he was initially on parole.

On 05/13/14, I checked C. BROTHERS' driver's license in eJusctice, which indicated Pennsylvania Department of Probation and Parole issued a warrant for C. BROTHERS' for violation of parole. The date of the warrant is 05/08/14.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/13/2014 | 05/13/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Texas Authorities:

On 05/13/14, I telephonically contacted Detective Darren Crump, Houston Police Department, and advised him of the warrant from Pennsylvania for CLAYTON BROTHERS. I advised him of the charges in this case and the case adopted by Troop B GIU. Detective Crump stated he may need L[redacted] HICKS medically examined in order to pursue charges in the state of Texas. Detective Crump stated he has already made contact with NYS CPS to make arrangements to have the examine completed. Detective Crump stated he is in the process of searching for C. BROTHERS. Detective Crump stated he would contact me with any new information.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/14/2014 | 05/14/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

JAMIE BROTHERS update:

On 05/14/14, I telephonically contacted JAMIE BROTHERS and provided her with an update of the investigation. J. BROTHERS stated she has heard from CLAYTON BROTHERS.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/15/2014 | 05/15/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

US Marshalls:

On 05/15/14, I was telephonically contacted by US Marshall Jeff Long, Pittsburg, PA, who advised me he has been assigned the case in the search for CLAYTON BROTHERS for absconding from PA Parole. I provided Marshall Long with details of the case. He stated he would contact me if they locate BROTHERS.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/17/2014 | 05/17/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Missing Items/Found Gun:

On 05/17/14, I patrolled to 861 Blanchard Hill Road, in the Town of Russell, and re-interviewed JAMIE BROTHERS. J. BROTHERS stated today she went out to her garage to show her friend things, and noticed a yellow lathe and band saw missing from the garage. J. BROTHERS stated she told JOHN PARKER about it and he stated he noticed the items missing several days earlier. J. BROTHERS also stated he daughter's, L[redacted] HICKS, cell phone was acting "messed up". J. BROTHERS did not

know if CLAYTON BROTHERS had return to take the items or possibly had someone else go to the house to get them or if someone else just stole them. J. BROTHERS also stated a friend of C. BROTHERS', JOSEPH MARTIN, lives just down the road. J. BROTHERS stated C. BROTHERS met MARTIN while in prison in Pennsylvania. J. BROTHERS stated she and C. BROTHERS bought MARTIN'S mother's house, and MARTIN was in prison for murder.

On 05/17/14, I personally interviewed L. HICKS. L. HICKS stated over the last several days her phone has been acting "messed up". L. HICKS stated messages where displaying as read, when she had not read them, and someone had been deleting her contacts. Since it was an Apple product, I inquired if she had been using iCloud and C. BROTHERS gaining access to the phone through that means. L. HICKS stated the phone used to belong to C. BROTHERS and when she checked her phone, there was an iCloud account for C. BROTHERS. L. HICKS stated she was delete that account from her phone. L. HICKS also stated she has several screen shots of C. BROTHERS' contacts from when he had the phone. L. HICKS stated she would email me the screen shots.

On 05/17/14, I personally interviewed JOHN PARKER. PARKER stated a couple days earlier, he was getting ready to move a lawn tractor out of the garage and there was a laundry basket on top. PARKER stated when he went to move the basket, a long gun fell out of it and there was a large quantity of ammunition in the bottom of the basket. PARKER went to state that today J. BROTHERS notified him a wood lathe was missing from the garage. PARKER stated he noticed the lathe missing several days earlier, but did not tell J. BROTHERS because he knew she had a lot on her mind. PARKER stated today he also noticed a band saw missing from the garage. PARKER stated the lathe was a yellow Powermatic, but did not know the description of the band saw. PARKER stated he did not take either and does not know who did. A supporting deposition was obtained and a copy is attached to this report as enclosure #5.

On 05/17/14, I secured the gun and ammunition in SP Canton BCI evidence locker and notified Investigator James Disalvo, since he adopted the case regarding C. BROTHERS unlawfully possessing the guns. (Refer to SJS# 5633862).

On 05/17/14, I personally interviewed MARTIN. MARTIN would not tell me why he served time in a Pennsylvania prison. MARTIN stated the last time he spoke with C. BROTHERS was around the time he left. MARTIN stated C. BROTHERS asked him a question and he stated "No". MARTIN would not tell me what the question was. MARTIN denied taking the lathe and band saw.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/18/2014 | 05/18/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

Found Ammo:

On 05/18/14, I patrolled to 861 Blanchard Hill Road, in the Town of Russell, after being advised by JOHN PARKER, he had found more high capacity magazines, with rounds in each. (Refer to SJS#5625525). While at the scene, I personally interviewed St. Lawrence County Deputy Sergeant Marty Domoulin, who is friends with the BROTHERS/HICKS family and lives nearby. I advised Sergeant Domoulin of the case, and he statedd he would be observant for CLAYTON BROTHERS or any other suspicious behavior in the area.

On 05/18/14, I personally interviewed BRENDA MARTIN, who is the wife of JOSEPH MARTIN, B. MARTIN stated she has not seen C. BROTHERS in some time and stated she would contact me if she has any contact with him. B. MARTIN stated her husband and C. BROTHERS met at the Huntington Prison, in Pennsylvania, when they were both serving time.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 05/22/2014 | 05/22/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

PA Parole Officer Charles Eckert:

On 05/20/14, I was telephonically contacted by Pennsylvania Parole Officer CHARLES ECKERT who stated he has been assigned to locate CLAYTON BROTHERS. I provided ECKERT with an update of this case and provided him with the registraion plate to BROTHERS' motorcyle as well as some of BROTHERS' contacts. ECKERT stated he would advise me when they locate BROTHERS.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 06/12/2014 | 06/12/2014 | NYE, CHRISTOPHER (INV) |

**Narrative**

PA Parole:

On 06/12/14, I telephonically contacted PA Parole Officer CHARLES ECKERT who stated they still have not located CLAYTON BROTHERS.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 06/17/2014 | 06/17/2014 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

Band Saw and Lathe:

On 06/17/14, I personally interviewed JAIME BROTHERS who state her daughter, ROBYN HICKS, sold the lathe and band saw, which were reported missing by J. BROTHERS on 05/17/14. J. BROTHERS stated she did not wish to pursue criminal charges against her daughter for seeling the items.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 06/17/2014 | 06/17/2014 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

No new information:

On 06/17/14, I personally interviewed JAIME BROTHERS, who stated neither she, nor her daughters, have had any sort of contact with CLAYTON BROTHERS. I advised J. BROTHERS I had been in contact with Pennsylvania Parole in an attempt to locate c. BROTHERS. J. BROTHERS stated she would contact me if she gets any new information about where C. BROTHERS may be.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 07/26/2014 | 07/26/2014 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

GoDaddy.com:

On 07/26/14, I was telephonically contacted by JAMIE BROTHERS who stated she received a notice from Wells Fargo, (800) 869-3557, stating her joint account with CLAYTON BROTHERS was used this morning on the website godaddy.com, (480)505-8855. J. BROTHERS stated the Wells Fargo claim number was 10726142215 and they did not have an ip address for the transaction.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 07/29/2014 | 07/29/2014 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

GoDaddy.com follow-up:

On 07/29/14, I received a phone call from JAMIE BROTHERS stating the transaction to GoDaddy.com was a yearly reoccurring transaction and not a recent transaction.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 10/21/2014 | 10/21/2014 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

Parole:

On 10/21/14, I contacted CHARLES ECKERT, Pennsylvania Parole, via email. ECKERT stated he had no new information to offer about the whereabouts of CLAYTON BROTHERS.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 01/05/2015 | 01/05/2015 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

JAIME BROTHERS:

On 01/05/15, I telephonically contatced JAMIE BROTHERS, who stated she has had no contact with CLAYTON BROTHERS or knows where he might be. I provided J. BROTHERS with an update of the investigation.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 01/26/2015 | 01/26/2015 | NYE, CHRISTOPHER (INV) |
| Narrative | | |

PA Parole:

On 01/26/15, I was telephonically contacted by Heather Kerstetter, PA Parole, who advised me CLAYTON BROTHERS was taken into custody in South Carolina and is currently detained in Lexington County Detention Facility. Kerstetter stated she would re-contact me once BROTHERS is extadicted to Pennsylvania, so he can be interviewed relative to this investigation and GIU Case #

On 01/26/15, I telephonically advised JAMIE BROTHERS that CLAYTON BROTHERS was in custody in South Carolina awaiting extradition to Pennsylvania.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 02/10/2015 | 02/14/2015 | NYE, CHRISTOPHER (INV) |

**Narrative**

Federal Case:

On 02/10/15, I personally met with Homeland Security Federal Agent Christopher Revord at SP Canton to discuss presenting the weapon's case (SJS# ), which is associated with this case to the United State Attorney General.

On 02/12/15, I was personally advised by Revord that the United States Attorney General is interested in prosecuting the weapons's case (SJS# ). I emailed Revord a receipt showing CLAYTON BROTHERS purchased 1000 rounds of 5.56x45mm ammo while living in Texas in 2011.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 02/14/2015 | 02/14/2015 | NYE, CHRISTOPHER (INV) |

**Narrative**

Updated JAMIE BROTHERS:

On 02/14/15, I telephonically advised JAMIE BROTHERS of the possibility the United States Attorney General may prosecute the weapon's case (SJS# ), which is associated with this case. I advised BROTHERS of the possibility of no arrest in this case, since it is only a misdemeanor and the federal charges were likely to be more severe. BROTHERS stated she would fully support that decision.

| Date of Action | Date Written | Officer Name & Rank |
|---|---|---|
| 03/03/2015 | 03/04/2015 | NYE, CHRISTOPHER (INV) |

**Narrative**

Houston Police Department:

On 03/03/15, I was telephonically contacted by Officer Kimberly Neal, Houston Police Department, who stated the Detective that was assigned this case in Texas was promoted shortly after I emailed the case to their department, and the case was never reassigned or worked on. Officer Neal stated she is in the process of reassigning the case and would expidite the investigation involving the sexaul abuse of LAURYN HICKS in Texas.

## ADMINISTRATIVE

| 74. Inquiries | 75. NYSPIN Message No. | 76. Complainant Signature | |
|---|---|---|---|
| 77. Reporting Officer Signature (Include Rank)<br>INV CHRISTOPHER NYE | 78. ID No.<br>3253 | 79. Supervisor Signature (Include Rank)<br>SR INV TIMOTHY PEETS | 80. ID No.<br>1992 |
| 81. Status<br>PENDING INVESTIGATION | 82. Status Date<br>04/23/2014 | 83. Notified/TOT | |

Solvability Total 0

# EXHIBIT "D"

Number called — Originates (call came from)

| | | | | | |
|---|---|---|---|---|---|
| +13153024042 | 8323221275 | 3153024042 | 4/27/2014 4:19:42 AM | 12:19 AM | SUNDAY |
| +13153024042 | 8323221275 | 3153024042 | 4/27/2014 4:19:43 AM | 12:19 | |
| 13155354952 | 3153024042 768 | 3155354952 | 4/27/2014 10:50:43 AM | 6:50 AM | |
| +13153024042 | 3152273319 | 3153024042 | 4/27/2014 1:38:59 PM | 9:38 AM | |
| +13155354952 | 3153024042 781 | 3155354952 | 4/27/2014 2:50:42 PM | 10:50 | |
| +13153024042 | 2814618816 1887 | 3153024042 | 4/27/2014 3:11:19 PM | 11:11 AM | |
| +13153024042 | 2814618816 80 | 3153024042 | 4/27/2014 3:55:37 PM | 11:55 AM | |
| +13153024042 | 3153792111 195 | 3153024042 | 4/27/2014 4:47:20 PM | 12:47 PM | |
| +13153024042 | 2814618816 539 | 3153024042 | 4/27/2014 7:05:28 PM | 3:05 | |
| +13153024042 | 4053143445 558 | 3153024042 | 4/27/2014 9:38:08 PM | 5:38 | |
| +13152873600 | 3153024042 111 | 3152873600 | 4/28/2014 2:33:14 AM | 10 33 PM | |
| 3153868260 | 3153024042 117 | 3153868260 | 4/28/2014 8:16:55 AM | 8:16 AM | LOCAL |
| +13152873600 | 3153024042 29 | 3152873600 | 4/28/2014 9:34:12 AM | 5:34 | |
| +13152873600 | 3153024042 1 | 3152873600 | 4/28/2014 9:40:40 AM | 5:40 | |
| +13153024042 | 3153472395 45 | 3153024042 | 4/28/2014 12:06:34 PM | 8:06 | |
| +13153868260 | 3153024042 126 | 3153868260 | 4/28/2014 12:16:55 PM | 8:16 | |
| +13158413000 | 3153024042 23 | 3158413000 | 4/28/2014 1:03:39 PM | 9:03 | MONDAY |
| +18008413000 | 3153024042 848 | 8008413000 | 4/28/2014 1:04:28 PM | 9:04 | |
| 3153868260 | 3153024042 26 Sec. | 3153868260 | 4/28/2014 1:40:48 PM | 9:40 | |
| +13153024042 ✱ | 3153790057 349 Sec. | 3153024042 | 4/28/2014 2:04:20 PM | 10:04 | |
| +13153024042 | 2814618816 1058 | 3153024042 | 4/28/2014 2:29:17 PM | 10:29 | |
| +13153024042 | 3152871500 90 Sec. | 3153024042 | 4/28/2014 2:46:39 PM | 10:46 | |
| +13153024042 ✱ | 3153179590 415 Sec. | 3153024042 | 4/28/2014 2:49:20 PM | 10:49 | |
| +12814618816 | 3153024042 | 2814618816 | 4/28/2014 2:57:33 PM | 10:51 | |
| +13153024042 | 3153179590 96 Sec. | 3153024042 | 4/28/2014 2:59:13 PM | 10:59 | |
| +13153024042 | 3153179590 95 Sec. | 3153024042 | 4/28/2014 2:59:14 PM | 10:59 AM | |
| +13153024042 | 3153475369 | 3153024042 | 4/28/2014 4:06:12 PM | 12:06 PM | |
| +13153024042 | 2814618816 | 3153024042 | 4/28/2014 4:11:05 PM | 12:11 | |
| 13153024042 | 3155354952 13 | 3153024042 | 4/28/2014 4:52:14 PM | 12:52 | |
| 3153868260 | 3153024042 29 | 3153868260 | 4/28/2014 5:01:46 PM | 1:01 | |
| 3153868260 | 3153024042 64 | 3153868260 | 4/28/2014 5:02:36 PM | 1:02 | |
| 13155354952 | 3153024042 28 | 3155354952 | 4/28/2014 5:19:50 PM | 1:19 | |
| +13153024042 | 3153861254 138 | 3153024042 | 4/28/2014 5:28:24 PM | 1:28 | |
| +12814618816 | 3153024042 330 | 2814618816 | 4/28/2014 5:32:55 PM | 1:32 | |
| +13153868260 | 3153024042 33 | 3153868260 | 4/28/2014 5:40:47 PM | 1:40 | |
| +18003477560 | 3153024042 106 | 8003477560 | 4/28/2014 6:11:12 PM | 2:11 | |
| +18003472683 | 3153024042 213 | 8003472683 | 4/28/2014 6:15:33 PM | 2:15 | |
| +13153790067 | 3153024042 357 | 3153790067 | 4/28/2014 6:28:40 PM | 2:28 | |
| +12814618816 | 3153024042 | 2814618816 | 4/28/2014 6:56:28 PM | 2:56 | |
| +13153024042 | 3155354952 37 | 3153024042 | 4/28/2014 8:52:14 PM | 4:52 | |
| +13153024042 | 3155354952 37 | 3153024042 | 4/28/2014 8:52:15 PM | 4:52 | |
| +13153868260 | 3153024042 44 | 3153868260 | 4/28/2014 9:01:45 PM | 5:01 | |
| +13153868260 | 3153024042 78 | 3153868260 | 4/28/2014 9:02:35 PM | 5:02 | |
| +13155354952 | 3153024042 39 | 3155354952 | 4/28/2014 9:19:49 PM | 5:19 | |
| +13153024042 | 8323221275 60 | 3153024042 | 4/29/2014 12:23:31 AM | 8:23 | |
| +13153790067 ✱ | 3153024042 41 | 3153790067 | 4/29/2014 12:31:28 AM | 8:31 | |
| +13153790012 ✱ | 3153024042 116 | 3153790012 | 4/29/2014 12:32:20 AM | 8:32 | |
| +13157793000 | 3153024042 33 | 3157793000 | 4/29/2014 1:37:01 AM | 9:37 PM | |